Bacher, Admrx., *v.* City National Bank of
Philadelphia, Appellant.

Argued January 18, 1943. Before MAXEY, C. J.; DREW,
LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Joseph W. Henderson,* with him *George M. Brodhead, Jr.,* and *Rawle & Henderson,* for appellant.

*Henry A. Craig,* with him *John J. Gain,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 22, 1943:

On pleadings consisting of a statement of claim, a stipulation of counsel, affidavit of defense, amended affidavit of defense, and a second stipulation of counsel, the court below entered judgment in favor of plaintiff.

A building and loan association was indebted in the sum of $3,051 to one Anna Hoffman. She died in December, 1939, and plaintiff, on January 29, 1940, became administratrix of her estate. William J. Ballen, a member of the bar, was employed by plaintiff as her attorney. He received from her a written power of attorney dated January 31, 1940, which authorized, directed and empowered him "to collect any and all moneys due the said estate, and to indorse any and all checks payable to me as administratrix of the said estate, and to deposit the funds so collected in his attorney's account." The building and loan association, in payment of its debt, executed two checks, one for $1,521 dated February 20, 1940, the other for $1,530 dated April 16, 1940, each payable to the order of "Estate of Anna Hoffman." When these checks were received, Ballen, without the knowledge of plaintiff, indorsed each of them

"ESTATE OF ANNA HOFFMAN
WM J BALLEN
ATTORNEY"

and deposited them in his personal account with defendant bank. They were collected in due course from the drawee bank, the proceeds were paid out by defendant on Ballen's personal checks, and plaintiff has never received any of the money.

The present suit is to recover the amount of the checks with interest. A twofold defense is offered; first, that the payee named in the checks was "fictitious" and not a person, and therefore the checks were payable to bearer; second, that Ballen was a fiduciary and defendant bank, under the provisions of the Uniform Fiduciaries Act, was not bound to inquire whether he was committing a breach of trust in depositing the checks in his personal account.

Section 9 of the Negotiable Instruments Law of 1901, P. L. 194, provides that "The instrument is payable to bearer: . . . 3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable; or, 4. When the name of the payee does not purport to be the name of any person." In *Hansen v. Northwestern National Bank of Minneapolis*, 175 Minn. 453, 221 N. W. 873, it was held, by a divided court, that a certificate of deposit payable to a decedent's estate was payable to bearer, because it did not designate as payee a name purporting to be that of a person. There are other decisions to the same effect.[1] On the other hand, there are authorities holding that a note payable to the estate of a deceased person sufficiently designates the payee to enable the legal rep-

[1] *Kluczny v. Matz,* 187 Minn. 93, 244 N. W. 407; *In re Ziegenhein,* 187 S. W. 893, 895 (St. Louis, Mo., Court of Appeals); *Lewisohn v. Kent & Stanley Co.,* 87 Hun. (N. Y.) 257; *Scott v. Parker,* 5 N. Y. S. 753; see also *Lyon v. Marshall,* 11 Barb. (N. Y.) 241; *Tittle v. Thomas,* 30 Miss. 122.

resentative of the estate to maintain an action thereon.[2] While there is apparently no precedent in Pennsylvania, we have repeatedly stated that in cases arising under this section of the Negotiable Instruments Law the guiding consideration is the intent of the drawer of the instrument in inserting the name of the payee: *Snyder v. Corn Exchange National Bank,* 221 Pa. 599, 606, 607, 70 A. 876, 878, 879; *National Union Fire Insurance Co. v. Mellon National Bank,* 276 Pa. 212, 218, 219, 119 A. 910, 912, 913; *Commonwealth v. Globe Indemnity Co.,* 323 Pa. 261, 266, 270, 185 A. 796, 798, 800. It is certain that the checks in the present instance were not intended by the building and loan association to be payable to bearer. While it is true from a strictly literal standpoint that the estate of a decedent cannot be said to be a name purporting to be that of a person, it is obvious that the words "Estate of Anna Hoffman" were used merely as an abbreviated designation of the payee intended, and if the full appellation had been employed, namely, "Administratrix of the Estate of Anna Hoffman, Deceased," no question would have arisen under section 9 of the Negotiable Instruments Law, not only because the identity of the payee would thereby have been established, but because of the express provision of section 8 that "The instrument . . . may be drawn payable to the order of: . . . 6. The holder of an office for the time being." In legal and non-legal circles alike it is so common to personify the estate of a deceased person and to use the term "estate" when what is really meant is the legal representative of the estate, that it would be the height of legalism to say that because of the use of the abbreviated form there was no person intended as payee who could indorse the instrument and it therefore became,

---

[2] *Shaw v. Smith,* 150 Mass. 166, 22 N. E. 887; *Peltier v. Babillion,* 45 Mich. 384, 8 N. W. 99; *McKinney v. Harter,* 7 Blackf. (Ind.) 385; *Stern v. Eichberg,* 83 Ill. App. 442; *Hendricks v. Thornton,* 45 Ala. 299; *Holmes v. Dunning,* 101 Fla. 55, 133 So. 557.

under the terms of the statute, an instrument payable to bearer.[3]

Section 9 of the Uniform Fiduciaries Act of 1923, P. L. 468, provides that "If a fiduciary makes a deposit in a bank to his personal credit of checks . . . payable to his principal and indorsed by him, if he is empowered to indorse such checks, . . . the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith." Section 1 defines "fiduciary" as including an "agent." The term as thus used is obviously more comprehensive than when confined to its purely technical meaning. However, the result in the present case is the same whether the facts be judged by common-law principles or by the provisions of the statute. In *Safe Deposit & Trust Company v. Diamond National Bank*, 194 Pa. 334, 44 A. 1064, it was held that, where checks were made payable to the administrator of a decedent's estate and he indorsed them as administrator and deposited them in his personal account in a bank, the fund was subject to be drawn out upon his personal checks and the bank was not liable for the loss occasioned by his misappropriation of the money. The theory of the decision was that, since he was entitled to indorse the checks, the bank, in the absence of any knowl-

---

[3] In 14 Harvard L. Rev. 442, 443, n. 3, Professor Ames characterizes as a "startling suggestion" Judge Brewster's remark (in 10 Yale L. J. 84, 89) that a note payable to the order of the estate of a deceased person is payable to bearer by force of section 9 of the Negotiable Instruments Law.

edge to the contrary, was justified in assuming that he was not committing a breach of his obligation by depositing the checks in his personal account, but that he would duly account for the proceeds. So, under section 9 of the act, it is provided that, unless the bank has actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary, it is justified, if the fiduciary is empowered to indorse checks payable to his principal, in accepting them as a deposit to his personal credit.

It does not appear in the pleadings in the present case whether defendant bank had actual knowledge that a written power of attorney existed and that one of its provisions was that Ballen should deposit the checks in his attorney's account. When it accepted the deposit to Ballen's personal credit the only risk it took, in the absence of such knowledge, was that Ballen might not have been authorized to indorse the checks; if no such authorization had existed, the bank clearly would have been liable for paying out funds on the basis of an unauthorized indorsement of the payee's name. But Ballen did have the power to indorse, and if the bank did not actually know that he had been directed to deposit the checks in his attorney's account it would not be liable because of his violation of this instruction and his misappropriation of the funds after receiving them upon his authorized indorsement; it was not under a duty to investigate whether he was committing a breach of his obligation as fiduciary in depositing the checks to his personal credit. If, on the other hand, the bank saw the letter of attorney, or otherwise had actual knowledge of the directions it contained, at or before the time it received the deposit or made payments thereout on Ballen's personal checks, plaintiff would be entitled to recover. The difficulty is, as already indicated, that the pleadings throw no light on the question as to when the bank first acquired knowledge of the provisions of that document, and, as a summary judgment should not be granted except in clear cases (*Koehring Company v. Ventresca*, 334 Pa. 566,

6 A.2d 297), it becomes necessary to have this controlling fact determined by a jury.

The judgment is reversed with a procedendo.

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

Justice DREW correctly states in the dissenting opinion the applicable law in this case as follows: "Before the bank may bring itself within the statutory protection, two conditions must be fulfilled: (1) the fiduciary must be empowered to endorse; and (2) there must be an absence of knowledge on the part of the bank of any fact which would make it guilty of bad faith." He adds: "Neither of these conditions has been met in the instant case." I think *both* conditions have been met. Ballen, the attorney, did have written authority from the administratrix "to collect any and all moneys due the said estate, and to endorse any and all checks payable to . . . the administratrix, and to deposit the funds so collected in the attorney's account". These three things Ballen was authorized to do were *in the disjunctive. As far as the bank was concerned,* Ballen's authority to endorse was *not* conditioned upon his depositing the funds so collected in his attorney account. His failure so to deposit was a breach of his trust, but the bank was protected in accepting the endorsement by the second thing authorized in his letter of attorney, to wit: "to endorse any and all checks". What he did with the funds he collected by the authorized endorsement was of no legal moment to the bank unless it had "actual knowledge that the fiduciary" was "committing a breach of his obligation as fiduciary in making said deposit" in his personal account. (See Sec. 9 of the Uniform Fiduciaries Act of 1923, P. L. 468).

The issue then narrows itself to this: Did the fact that Ballen deposited the endorsed checks in his personal account with defendant bank give the bank "actual knowledge" within the meaning of Sec. 9 of the Fiduciaries Act, supra, that the fiduciary was committing a

breach of his obligation as fiduciary? My answer to this question is "no". We so held in *Safe Deposit & Trust Co. v. Diamond National Bank*, 194 Pa. 334, 44 A. 1064, where an administrator endorsed "checks for the estate", deposited them in his individual account and subsequently checked out the proceeds for the private purposes and never made restitution. In holding the bank *not* liable for the resulting loss to the estate, we said: The administrator "had the undoubted right to draw the money and, if he chose, thereupon to deposit the money thus received to the credit of his own account, he had a perfect right to do so. What he did do was nothing more than the equivalent of such action on his part. The money having gone into his own account was subject to be drawn out upon his personal checks which the bank could not refuse to pay. The question is entirely different from the one which would arise if after the deposit was made it was claimed as money of the trust and the bank was notified of the claim before it was paid, but that is not this case."

In a substantially similar case *Whiting v. Hudson Trust Co.*, 234 N. Y. 394, 138 N. E. 33, the New York Court of Appeals held: "Where an executor deposited estate funds in his 'special' personal account in a trust company, and thereafter converted them to his personal use, the trust company was not liable as a party to the wrong, the executor being legally entitled to deposit trust funds to his personal account". Speaking for the Court, Judge CARDOZO said: "The defendant [bank] did not become a party to a wrong crediting these checks [drawn to himself as trustee] to its depositor's personal account. . . . What it did was to accept the check for the use of the depositor upon an agreement that the proceeds should be subject to his order. When the order was given and the money disbursed, the situation was the same as if cash had been delivered for safekeeping and afterwards returned. In such a situation, the defendant is to be held liable, if at all, only upon a show-

ing that by the form of the account it has facilitated a conversion and made itself, in so doing, a party to a tort."

In the case of *Bischoff, as Admx. v. Yorkville Bank*, 218 N. Y. 106, L. R. A. 1916 F, 1059, 112 N. E. 759, the Court of Appeals of New York held that a fiduciary may legally deposit the trust funds in a bank to his individual account and credit. The bank has the right to assume that the fiduciary will apply the funds to their proper purposes under the trust, and does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, to the knowledge of the bank, credits created by deposits of the trust funds. But its participation in a diversion of such funds may result from either acquiring an advantage or benefit directly through or from the diversion, or joining in a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it. In that case Judge COLLIN, speaking for the Court, said: "A bank does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, in the knowledge of the bank, credits created by deposits of trust funds. The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. The presumption is, and after the deposits are made remains until annulled by adequate notice or knowledge, that the depositor would preserve or lawfully apply the trust funds. . . . A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust."

In the case of *Allen, Admr., etc., v. Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, the Supreme Judicial Court of Massachusetts held that a bank is not liable for loss to an estate through the transfer of the funds by the administrator to his individual account, if it has no notice that the transfer was for the purpose of effecting a misappropriation of the funds. In a footnote to this report in L. R. A. 1915 C, appears this statement: "There are three ways in which a bank may incur liability and be compelled to make good deposits that have been misappropriated by the fiduciary: (1) By a violation on its part of the contract, express or implied, between it and the owner of the fund . . . (2) By appropriating the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank . . . (3) By assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that the fraud is being or about to be perpetrated by the fiduciary."

Sec. 9 of the Fiduciaries Act of 1923, supra, makes it necessary that in order to hold a bank liable under circumstances like those here present it would have to be shown that the bank had "actual knowledge that the fiduciary is committing a breach of his obligations as fiduciary in making said deposit" or that the bank had "knowledge of such facts that its action in receiving the deposit and paying the check amounts to bad faith". The bank had *no* such actual knowledge and it cannot be convicted of "bad faith" unless it knew when it cashed these checks that it was Ballen's duty under his power of attorney "to deposit the funds so collected in his attorney's account". On this record it cannot be determined *when* the bank knew this. Therefore a trial is necessary to establish this controlling fact. If the defendant bank knew when it cashed these checks and permitted Ballen to deposit the proceeds in his personal account in that bank, that he was thereby committing a breach of trust, it was privy to this fraud and liable

in the action. If it did not have this knowledge *at that time* it cannot be convicted of bad faith and no recovery against it should be permitted.

We may concede in this case that the nature of the endorsement we have here "should have placed any intelligent and careful banker upon notice"* (as alleged), and that the action of the bank is not demanding Ballen's letter of attorney, which would have revealed to it his duty to deposit the proceeds of these checks in his attorney's account, was negligence, but a finding of the bank's *negligence* will not in this action sustain a recovery against it. A recovery can be had only if the facts which may later be established show that the bank was privy to Ballen's fraud. Up to this point no such showing is made.

I agree that the judgment of the court below should be reversed with a procedendo.

DISSENTING OPINION BY MR. JUSTICE DREW:

The checks payable to the Estate of Anna Hoffman, were as the majority correctly states, clearly not bearer instruments, but were payable to the legal representative of decedent. The payee was the administratrix of the estate, the present plaintiff, and the checks could be negotiated only after endorsement by her (Negotiable Instruments Law of May 16, 1901, P. L. 194, Sec. 30, Sec. 191), or by her duly authorized agent (Sec. 19). She had made William J. Ballen her agent under written power of attorney to endorse checks payable to her as administratrix *and* to deposit the proceeds in his at-

---

* While the deposit by an agent or fiduciary, of paper drawn by him in his representative capacity, for credit to his individual account, might, along with other circumstances, be sufficient to charge the depository bank with notice of misappropriation by the agent or fiduciary, it seems to be settled that, without additional circumstances, it will not constitute such notice. (Citing cases.) 57 A. L. R. 925. See also Empire Trust Co. v. Cahan, 274 U. S. 473, opinion by Justice Holmes.

torney's account. The undoubted purpose of this authorization was to enable Ballen to collect moneys due the estate and deposit them under a fiduciary label. His right to negotiate such checks was not absolute, but was conditioned upon his depositing the proceeds in his attorney's account. Letters of attorney are to be construed strictly, and when special powers are given, they are not to be enlarged unless clearly so intended: *Culbertson v. Cook*, 308 Pa. 557, 562; *Schenker v. Indem. Ins. Co. of N. A.*, 340 Pa. 81, 84. Ballen, however, endorsed the checks in question and deposited them to his personal credit, which he was without any authority to do.

Section 23 of the Negotiable Instruments Law provides that a signature which is forged or made without the authority of the person whose signature it purports to be is wholly inoperative.[1] An unauthorized endorsement is in legal effect the same as a forgery (*Water Co. v. Bank*, 123 Tenn. 364, 131 S. W. 447), and no title to the instrument passes by reason of such an endorsement (*Lindsley v. First Nat. Bank*, 325 Pa. 393). In *Trust Co. v. Subscribers, Etc.*, 150 Md. 470, 133 A. 319, where a bank honored checks payable to an insurance company and permitted the latter's agent to deposit them in his personal account, it was held that the bank was liable to the payee insurance company. In *Gustin-Bacon Co. v. First Nat. Bank*, 306 Ill. 179, 137 N. E. 793, one Riddle, a clerk, endorsed checks payable to his employers with the partnership name and then with his own name, and defendant bank credited the proceeds to his personal account. In holding the bank liable to the payees of the check, the Supreme Court of Illinois said (p. 183) : "The

---

[1] "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

defendant took the risk of the authority of Riddle to indorse the check and appropriate the proceeds . . . The defendant dealt with Riddle at its peril, and was bound to ascertain not only the fact of his agency but the extent of his authority, and there was an entire failure to make proof that he had any authority. Without any evidence whatever of authority of Riddle the defendant accepted and collected the check and gave the proceeds to Riddle. There was no defense to the suit."

These decisions, decided under the Uniform Negotiable Instruments Law, are in accord with the cardinal principle of the law of agency that one dealing with an agent is, in the absence of greater apparent authority, bound by the terms of his actual authority. In the instant case Ballen had no apparent authority at all,[2] and his actual authority was not sufficiently broad to hold his principal bound by what he did. It follows that no title to the checks passed to the bank, which on receiving possession of them was guilty of a conversion. This much is conceded by the majority, as appears from the statement in the opinion that when the bank accepted the deposit to Ballen's personal credit, it took the risk he might not have been authorized to endorse the checks, and "if no such authorization had existed, the bank clearly would have been liable for paying out funds on the basis of an unauthorized endorsement of the payee's name." The endorsement being in fact unauthorized, the bank should be held liable.

The majority, however, finds in section 9 of the Uniform Fiduciaries Act a means of excusing defendant.

---

[2] Restatement of Agency, Section 177, Comment (a) :

"The possession of a document, unless it is endorsed in blank or unless it is a negotiable instrument payable to bearer, does not create in a holder who is not an endorsee apparent authority to transfer it or to collect a claim which it represents. Furthermore, the fact that the possessor is authorized to do something with reference to the document, such as the collection of interest upon a promissory note, does not give him power to deal with the instrument in an unauthorized manner."

Under that section, a bank which permits a fiduciary to deposit to his personal credit checks which are payable to his principal is not liable to the principal if the fiduciary is empowered to endorse such checks, unless, inter alia, the bank has knowledge of such facts that its action in receiving the deposit amounts to bad faith. As was pointed out by Mr. Justice STERN in *Davis v. Pennsylvania Co., Etc.,* 337 Pa. 456, 460, section 9 of this legislation "lays down the same test of responsibility in this respect [bad faith] that section 56 of the Negotiable Instruments Law of 1901, P. L. 194, does in regard to notice of an infirmity in a negotiable instrument or defect in the title of the person negotiating it." Before the bank may bring itself within the statutory protection, two conditions must be fulfilled: (1) the fiduciary must be empowered to endorse; and (2) there must be an absence of knowledge on the part of the bank of any fact which would make it guilty of bad faith. Neither of these conditions has been met in the instant case. Ballen was not empowered to endorse the checks; he was only so empowered if he deposited them in his attorney's account. The sole purpose of the authorization to endorse was to enable him to make deposits under a fiduciary label. To ignore this limitation upon the power, as the majority does when it says that he comes within the literal wording of section 9 because he could under some circumstances endorse, is to indulge in unrealistic scholastic reasoning, and plainly and flagrantly thwarts the intention of the giver of the power. But there is even less ground upon which to base a fulfillment of the second condition, which is not even mentioned in the majority's opinion. Ballen presented two checks not endorsed by the payee named on their face. In justification of his right to endorse he showed only naked possession; he appeared before the bank with no better credentials than those possessed by a thief. For the bank under such circumstances to have granted his request to honor the checks and pay him the money certainly amounted

to bad faith. It was never the intention of the legislature when it enacted section 9 of the Uniform Fiduciaries Act to free the bank of defenses arising from an infirmity of title appearing on the face of the instrument. This factor differentiates the instant case from that of *Safe Deposit & Trust Co. v. Bank*, 194 Pa. 334, relied on by the majority. There the check was made out to the administrator and endorsed by him as administrator. He had apparent, if not actual, authority to do everything he did up to the point of drawing out the money for his own use, and the bank could not reasonably be expected to divine that when he deposited the proceeds to his personal account he intended later to embezzle them. It was to prevent the assertion of such secret equities, or those difficult of ascertainment, that section 9 was enacted, not to enable one without legal title to create legal title in another, as a thief may do in the case of a bearer instrument. In the present case the endorsement was on its face without authority, and the bank therefore honored it at its peril. For its misplaced confidence resulting in injury to plaintiff it should be responsible.

The point here at issue was passed upon in *Main Belting Co. v. Corn Ex. Bank*, 325 Pa. 168. In that case the treasurer of plaintiff company, Smith, drew in plaintiff's name checks on defendant bank payable to that bank, and other checks on another bank also payable to defendant, and received cash for them from defendant's teller. They were endorsed neither by defendant nor by Smith. As treasurer, Smith was authorized in writing to deposit checks drawn on other banks to plaintiff's order, and to make payments from the funds on deposit with defendant "upon and according to the checks of plaintiff", signed by himself as treasurer. In holding that the bank was not warranted in permitting Smith to nullify this written order to the bank by substituting his own oral demand to be paid cash, we said, speaking through Mr. Justice LINN (p. 171) : "The contract between the bank and plaintiff required the bank to pay

plaintiff's checks to the payee designated by plaintiff and to no one else, save on the order of the payee: *United Security Life Insurance Co. v. Central National Bank*, 185 Pa. 586, 40 A. 97, and cases following it. The defendant, who was the payee, could therefore apply the proceeds only for the purposes designated by the drawer." In *Stroudsb'g Security Trust Co. Case*, 145 Pa. Superior Ct. 44, the treasurer of a corporation pledged to defendant bank as security for his individual obligation certain negotiable bonds payable to bearer, which the bank knew belonged to the corporation. There being no evidence of the treasurer's authority to pledge his principal's property, it was held that the bank's acceptance of the bonds under these circumstances amounted to bad faith as a matter of law.

In the instant case checks were endorsed by Ballen who was not the payee. The infirmity of his title was known to defendant, being patent upon the face of the instruments, and defendant in accepting the checks without ascertaining the source and extent of his power to endorse was certainly chargeable with bad faith. Therefore it does not come within the protection afforded by section 9 of the Uniform Fiduciaries Act. The consequence of the majority's holding to the contrary is to enable an agent with a limited power of attorney to transform it into a general one, and thereby commit a fraud upon his principal which the latter may be powerless to redress, and it places a bank which makes no endeavor to learn the terms of the power in a better position than one which ascertains its contents.

For these reasons I would affirm the court below in entering judgment for plaintiff.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

While we are all in accord that the checks herein made payable to the "Estate of Anna Hoffman" are not instruments made payable to *bearer* under Section 9 of

the Negotiable Instruments Law of 1901, P. L. 194, I am unable to agree with the majority in the conclusion which they have reached. I would affirm the judgment of the court below as a matter of law. I see no valid reason for submitting this case to a jury.

When the lawyer for the estate presented to defendant bank two checks payable to the order of the estate, endorsed by him "Estate of Anna Hoffman, Wm. J. Ballen, attorney", and deposited the checks in his individual account in defendant bank, the latter was placed under an immediate duty to inquire concerning the extent of his authority. Had nothing more than this appeared in the case, all concede that the bank would be liable.

According to the stipulation of counsel, it was *subsequently* discovered, and it is so noted in this Court's opinion, that the administratrix of the estate had given the lawyer a letter of attorney, authorizing him "to collect any and all moneys due the said estate, and to endorse any and all checks payable to me as administratrix of the said estate, *and to deposit the funds so collected in his attorney's account*". (Italics mine.) The record is silent, however, as to whether the letter of attorney, so belatedly found, was in the bank's possession or among the effects of the defaulting lawyer.

The decision in this case depends upon the construction of Section 9 of the Uniform Fiduciaries Act of 1923, P. L. 468, 20 PS, Section 3393, as to what constitutes "actual notice" and "bad faith". This section reads as follows: "If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary; or of checks payable to him as fiduciary; or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw checks thereon; or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks; or if he otherwise makes a deposit of funds held by him as fiduciary,—the bank re-

ceiving such deposit is not bound to inquire whether
the fiduciary is committing thereby a breach of his obli-
gation as fiduciary, and the bank is authorized to pay
the amount of the deposit, or any part thereof, upon the
personal check of the fiduciary, without being liable to
the principal, unless the bank receives the deposit or
pays the check *with actual knowledge that the fiduciary
is committing a breach of his obligation as fiduciary in
making such deposit or in drawing such check or with
knowledge of such facts that its action in receiving the
deposit or paying the check amounts to bad faith.*"
(Italics mine.) As I understand the view of the ma-
jority, if the letter of attorney was in the possession of
the bank, the contents of the letter of attorney would be
regarded as *actual notice* of the attorney's breach of
trust, and would result in the bank's liability to the plain-
tiff. They decide, however, that if the instrument was
discovered in the lawyer's files, a determination that the
lawyer did possess authority to endorse would alone be
sufficient to relieve the bank from liability. In such
circumstance the majority hold that all other parts of
the authorization may be disregarded. As I understand
it, the issue to be tried by the jury is: in whose posses-
sion was the letter of attorney found?

I am of the opinion that there is no sound basis for
such a highly technical distinction. *Since the possible
irregularity in the endorsements appeared upon the
checks themselves,* it immediately placed the defendant
bank under a duty to inquire as to the scope of the
lawyer's authority. This the bank did not do. It now
seeks refuge in the later discovered letter of attorney—
a document which should have been produced in the first
instance. The paper reveals upon its face the limitations
upon and the extent of the attorney's authority. It dis-
closes that the lawyer was directed, after collection and
endorsement of checks, to place the proceeds in his
*"attorney's account".*

It is my view that the lawyer in the instant case, by
his manifest violation of instructions clearly appearing

in the instrument of authorization, committed a breach of trust, concerning which the defendant bank had *"actual notice"* within the meaning of the statute. The defendant bank also acted in "bad faith" within the meaning of the statute. This is particularly true because the breach of trust was committed in the defendant bank and was, by the deposit in the bank, aided and assisted by the bank employees in entering and recording the deposit. This is a matter of law and not one of fact.

The ninth section of the Uniform Fiduciaries Act has been construed by this court on three occasions: In *Pennsylvania Co., etc. v. Ninth Bank & Trust Co.*, 306 Pa. 148, a check was given by a trustee to a bank in payment of the trustee's personal debt to the bank. In an opinion by Mr. Justice Drew, in which the bank was held liable, it is stated (P. 153), ". . . it had knowledge of all the facts essential to show a breach of trust". In *Union Bank and Trust Co. v. Girard Trust Co.*, 307 Pa. 488, two officers of the bank were authorized to execute clearing house due bills, which they did. There existed no facts to put the payee bank on inquiry as to a breach of trust (pp. 496-497), and, in an opinion by Mr. Justice Linn, we held that the payee bank incurred no liability. In *Davis, Trustee, v. Pennsylvania Co., etc.*, 337 Pa. 456, we held, in an opinion by Mr. Justice Stern, that a bank was not liable, for receiving, as a deposit in a fiduciary's *personal* account, a check drawn by the fiduciary on the *trust* account and payable to his own order. (P. 459) ". . . *unless the bank received the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith"*.

I agree that these three decisions represent accurate statements of the law, properly applied to the factual situations in each of these cases. The facts in the present case, however, present an entirely different situation.

Here there were endorsements which should have placed any intelligent and careful banker upon notice. The bank well knew, or should have known, that the duties of a lawyer for an estate are limited solely to legal matters and, in the absence of special authority, have nothing to do with the fiscal affairs of the estate. It, therefore, imposed a duty upon the bank to inquire concerning the basis and scope of the lawyer's authority. Had it performed this duty, the power of attorney would have disclosed the extent of the lawyer's authority. With the deposit in the defendant bank it revealed also the commission of the breach of trust in which the bank participated. In its failure to act, and by its participation, the bank should, in my opinion, be held liable under principles analogous to those stated in *Pennsylvania Co., etc. v. Ninth Bank & Trust Co.*, supra.

I am led by the foregoing situation into an examination of the decisions as to what constitutes *actual notice* under the statute. The majority *assumes* that it must always be affirmative proof of the fact itself. On the contrary, notice is regarded in law as *actual* when the party sought to be affected by it knows of the existence of the particular fact in question, *or is conscious of having the means of knowing it.* 46 C. J. 539, §7. The type of notice referred to as *"actual notice"* is susceptible of sub-division; it may be either express or implied; that is, it may consist of knowledge actually brought personally home, *or it may consist of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact.* (Italics mine.) *Id.* §8, see *City of Baltimore v. Whittington*, 78 Md. 231, 235; *Rhodes v. Outcalt*, 48 Mo. 367, 370; 28 Words and Phrases, page 821.

The endorsements on these negotiable instruments placed the defendant bank upon immediate inquiry as to the authority of the lawyer. The slightest inquiry would have resulted in the production of the letter of attorney. This would have disclosed the extent of the

lawyer's authority, as well as the breach of trust which resulted in the deposit *in defendant bank* to the lawyer's personal account. This, in my opinion, constitutes *actual notice* within the meaning of the statute. In other fields liability has always accrued where a person is put upon inquiry but fails to act: *Bradlee & Co. v. Whitney & Kemmerer,* 108 Pa. 362; see also *McCray v. Clark et al.,* 82 Pa. 457; *Hottenstein v. Lerch,* 104 Pa. 454.

Furthermore, I am of the opinion that these facts reveal *"bad faith"* as defined by the Act. Bad faith, in such circumstances, is stated by Mr. Justice LINN in *Union Bank & Tr. Co. v. Girard Trust Co.,* 307 Pa. 488, 498. *"When it is decided that inquiry should have been made, and was not, a taker will be held to have acted in bad faith, if inquiry should have elicited the officer's misappropriation; a payee is not excused for not discovering what he could so have learned."* In that case there was held to be no liability because there was nothing to put the payee on inquiry. Much learning has been expended upon the subject as to what constitutes "actual notice" and "bad faith" under the Uniform Fiduciaries Act, all of which affirm the principles above stated: see *Brannan's Negotiable Instrument Law* (Sixth Edition) 633; 18 Michigan Law Review 355; 81 University of Pennsylvania Law Review 617; 3 Scott, Trusts, §324.5, p. 1752, *et seq.*

As the bank relies upon the written power of attorney, the *place* where the instrument was found is immaterial. The effect should be precisely as if it had been presented to the bank at the time of the deposit. Since the bank was delinquent in its duty to secure the production of the power of attorney originally, it certainly should be placed in no better position merely because of the fortuitous circumstance that the letter remained in the lawyer's file. The bank should not be permitted to profit by its own delinquency. Moreover, it is equally clear that the letter cannot be used by the bank to establish the authority of the attorney without regard to the

other provisions appearing in the same instrument. The bank should not be permitted to affirm and disaffirm at the same time. It must accept the burden with the benefits. The instrument must be read as a whole and its interpretation is for the court.

I would hold, as did the court below, that this defendant did have *actual notice* of the breach of trust, and also acted in bad faith within the meaning of the Uniform Fiduciaries Act. I would, therefore, affirm its judgment.