Paul J. Widlitz, J.
George Leadbetter opened an account with the defendant, Reynolds & Co., a stock brokerage house, in the name of ‘ ‘ Estate of Elsie C. Finlay, George Leadbetter, Executor, c/o Mr. giyufy, 2 gunrise Highway, Baldwin, Long Island, New York” for purposes of disposing of certain stock assets of the estate.
A number of certificates for shares of stock registered in the name of the decedent were delivered to the broker in November, 1957, accompanied by certified copies of the will and letters testamentary. These certificates were properly indorsed by George Leadbetter as executor. The securities were sold, and the proceeds of the sale amounted to $29,092.54. Reynolds & Co. thereupon sent two checks in full payment of the proceeds, one dated December 4, 1957 in the amount of $24,780.20, and the other dated December 31, 1957 in the amount of $4,312.34. Both checks were made payable to “ Estate of Elsie C. Finlay ” and both were mailed to Mr. giyufy as attorney for the executor. The two checks were deposited in the Meadow Brook National Bank, Baldwin, and bore the following indorsements: “ Estate of Elsie C. Finlay by George Leadbetter, executor ” and then the further indorsement: “ For deposit Frederic J. giyufy Spec. No. 2.” The purported indorsement of the ‘‘ Estate of Elsie C. Finlay by George Leadbetter, executor,” was a forgery and never made by Leadbetter. Both checks were deposited in an account maintained by giyufy with the Meadow Brook National Bank, and the said bank, in the ordinary course of its business and as collecting bank, guaranteed the above two indorsements by indorsing on both checks the following: “ Pay to the Order of any bank, banker or trust go. All prior endorsements guaranteed the meadow brook national bank Central Baldwin *629 Branch Baldwin, New York.” In the ordinary course of its business, the moneys so collected by the Meadow Brook National Bank were credited to the account of Siyufy, and the proceeds converted by Siyufy to his own personal use. Siyufy subsequently died in November, 1960, leaving no estate, and it was then that the plaintiff discovered the fraud.
The executor of the estate, as plaintiff, seeks recovery in two separate actions, consolidated for this trial, and the parties now appear before this court in agreement as to most of the facts and waive trial by jury.
In one action, recovery is sought from the Meadow Brook National Bank as the collecting bank for money had and received. The plaintiff simply alleges in the complaint that he, the executor of the estate of Elsie C. Finlay, is the true owner of the checks; that the checks came into the hands of the collecting bank by reason of the forging of the plaintiff’s signature; that the checks were collected from the drawee; and that the defendant collecting bank still holds said sums for the account of the plaintiff.
The second action was instituted against Reynolds & Co. on the theory that delivery of the checks to Siyufy as agent of the executor did not constitute payment of an existing indebtedness; that in order to extinguish such an obligation, the checks not only had to pass, but further said checks had to be accepted and in due course actually paid. Since the checks were not in due course paid because of the intervening forgery, the indebtedness still stands.
Reynolds challenges this concept and, in addition, instituted a third-party action against the Meadow Brook National Bank as the collecting bank, predicating such action on the bank’s guarantee of all prior indorsements as indicated by its restrictive indorsement.
Being thus assailed by both the executor of the estate as well as Reynolds & Co., the Meadow Brook National Bank takes refuge behind the legal contention that the checks drawn by Reynolds and payable to the “ Estate of Elsie C. Finlay ” were bearer instruments, rendering all indorsements, whether they be forgery or not, of no consequence since bearer paper passes by delivery requiring no indorsement and renders any contained indorsements immaterial, of no consequence, and mere surplusage (Negotiable Instruments Law, § 60).
At common law bearer paper was created when the maker knowingly and intentionally made a check payable to a fictitious or nonexistent person. The maker’s knowledge and intention were considered the controlling factors. Even where the maker of a check unknowingly made it to the order of a fictitious or *630 nonexistent person intending it to be paid to a true person, such a check was refused the label of bearer paper (Shipman v. Bank of State of N. Y., 126 N. Y. 318).
Section 28 of the Negotiable Instruments Law of the State of New York is a codification of this common-law rule (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135).
Reynolds in issuing the two checks in payment of stock sold on behalf of the estate certainly intended that those checks be delivered to the executor as the legal representative of the estate. To contend to the contrary would be unrealistic. Were not certified copies of the will and letters testamentary demanded when the account was opened? For what other reason than to determine the legal representative of the estate and the authority for the transactions ? Could it be said with any degree of forcefulness that Reynolds when drawing the checks payable to the estate intended that the two checks be launched into circulation and be paid otherwise than by delivery to the legal representative of the estate? Who else had such authority? Assuredly not the attorney for the estate, Siyufy; if such had been intended, the checks would have been made payable to him. The language of judicial decision and interpretation must be the language of logic.
The' defendant, Meadow Brook National Bank, in projecting the theory that checks payable to an estate are bearer paper, relies in the main on two old New York cases.
In Lewisohn v. Kent & Stanley Co. (87 Hun 257) decided in 1895, prior to the codification of section 28 of the Negotiable Instruments Law of the State of New York, the court was confronted with a motion seeking to vacate a warrant of attachment secured by the plaintiff against the defendant. It was the movant’s contention that the affidavit upon which the warrant of attachment was predicated did not recite facts sufficient to create a cause of action. The affidavit under attack indicated a promissory note payable to the estate of Littlefield four months after date in the sum of $10,000. The attacking movant presented no argument or facts negating the intent to create a bearer instrument — for the recitation in the affidavit could have been so interpreted. The court in discussing this aspect specifically stated as follows (p. 259): “ If, however, we take the view most favorable to the appellant, that there is no such legal entity as the ‘ Estate of D. G. Littlefield ’.” From such language, the court might have been of the opinion that there conceivably could be no such estate in existence and that the note might have been intended to be payable to a fictitious payee, to wit, “ Estate of D. G. Littlefield.”
*631 Bearer paper can be created by making a check payable to an estate that does not exist and the maker knew and intended the check to be bearer paper or, better yet, to an estate in existence but not intended to be so payable as was determined in the second decision submitted by the defendant — Scott v. Parker (5 N. Y. S. 753 [1889]) in the City Court of New York.
Where a check is made payable to an estate by a debtor and delivered to the authorized receiving agent of the executor of that estate in payment of the indebtedness, the intent of the payee is to pay to the legal representative of the decedent the moneys due and owing the estate. To hold otherwise would be sophistical (Bacher v. City Nat. Bank of Philadelphia, 347 Pa. 80; City of New York v. Bronx County Trust Co., 261 N. Y. 64).
With the determination now made that the checks in question were not bearer instruments, we come to the consideration of the defendant bank’s liability to the plaintiff. Admittedly the indorsements of the executor of the estate were forgeries and the source of the defendant collecting bank’s title a nullity. “ [T]he collecting bank on the forged endorsement acquires no title whatever to the paper because the endorsement, its only source of title, is a nullity. It therefore is wrongfully in possession of the check and in equity and good conscience holds it for the payee. If, while in possession of it, it by means of the forged endorsement collects it, then it holds the proceeds of the collection in the same way for the payee, and that relationship creates a privity between it and the payee. And if the payee elects to ratify the collection of the check by the collecting bank he may recover from it the amount collected.” (Henderson v. Lincoln Rochester Trust Co., 303 N. Y. 27, 32; 9 C. J. S., Banks and Banking, § 357, p. 763.)
By recovery in such fashion, the plaintiff has elected to ratify the collection in due course of the two checks by the defendant, Meadow Brook National Bank, and thus must fall its action against Reynolds & Co. (Hunter v. Wetsell, 84 N. Y. 549).
Accordingly, judgment is granted plaintiff against Meadow Brook National Bank in the sum of $29,092.54, together with interest, and the complaint dismissed as to the defendant, Reynolds & Co.