487 A.2d 857

Sidney LEVY and Frieda Levy, as Assignees of Sid-Fried Enterprises, Inc., and Sidney Levy and Frieda Levy, Trustees of Novelty Printing Co. Profit Sharing Trust

v.

FIRST PENNSYLVANIA BANK N.A., Appellant

v.

Robert V. BOLGER, II, Bennett G. Picker, Arthur W. Hankin, Carl S. Tannenbaum and Steven R. Waxman, Individually and t/a Bolger & Picker, a partnership, and Richard S. Robinson.

Superior Court of Pennsylvania.

Argued Aug. 22, 1984.

Filed Jan. 9, 1985.

Petition for Allowance of Appeal Granted June 17, 1985.

74

J. Dennis Faucher, Philadelphia, for appellant.

Richard M. Jordan, Philadelphia, for appellees.

Before McEWEN, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

First Pennsylvania Bank appeals the dismissal of its exceptions to the Opinion of Judge Lois G. Forer, awarding appellee $222,776.87 with interest. The underlying action is a suit for conversion of three checks paid to a person other than the owner.

The facts are simple. The Levys were clients of the law firm of Bolger & Picker. When they sold their business, Novelty Printing, in February, 1978, the Levys instructed Richard Robinson, a partner at Bolger & Picker, to open an

account for them in the name of B & J Corp.[1] at a local brokerage firm. When the treasury bills purchased by the broker matured, Robinson was directed to deposit checks sent to him by the broker into the Levy's bank accounts at Girard Bank and Industrial Valley Bank.

Robinson received three checks in the sums of $75,000, $75,000 and $72,776.87 from the broker. Instead of depositing them in the Levy's bank accounts, he deposited them in his own personal account at First Pennsylvania. Robinson accomplished this by signing the back of the checks with the names of the payees,[2] B & J Corp. and Novelty Printing Company Profit Sharing Trust, and the notations "deposit to account No. 773–784–4". This was Robinson's personal account. He later withdrew the money and disposed of it.[3] When the scheme was discovered, the law firm's insurer paid to the Levys the amount of the checks.[4]

The Levys then brought this action against First Pennsylvania for conversion. The bank joined Bolger & Picker and Robinson as co-defendants.[5] At a non-jury trial, the Levys were awarded $222,776.87 with interest from September 14, 1979, the date upon which the insurer reimbursed the Levys.

Here, the bank appeals the trial court's dismissal of its exceptions.

Appellant assigns a number of errors to the lower court's opinion; we address them *seriatim*. Appellant first argues that it cannot be held liable for making final payment on the

1. B & J Corp. was to be the Levys' new business enterprise. The account contained both the assets of the Novelty Printing Company Profit Sharing Trust and the proceeds of the sale of the company.

2. Two of the checks were payable to the order of Novelty Printing Company Profit Sharing Trust. One was payable to the order of B & J Corp. Lower court opinion at 2–3.

3. Richard Robinson is now serving a prison sentence for embezzlement, forgery and fraud. He is a defendant in this action, but took no part in the trial.

4. The insurer advanced the money and took loan receipts. Lower court opinion at 25.

5. Bolger & Picker settled with the Levys after the pleadings were filed. Appellant's Brief at 4.

instruments because Robinson's endorsements were not for-
geries. The argument is rooted in the language of 13
Pa.C.S. § 3419 (Purdon's 1984 Pamphlet)[6], which states:

§ 3419. Conversion of instrument; innocent representa-
tive

(a) Acts constituting conversion. An instrument is con-
verted when:

(1) a drawee to whom it is delivered for acceptance
refuses to deliver it on demand;

(2) any person to whom it is delivered for payment
refuses on demand either to pay or return it;

(3) it is paid on a forged instrument.

Appellant avers that the endorsement was not forged
because Robinson had the authority to endorse the checks.
If he did have the authority to endorse, appellant claims
Robinson's writing of the payees' names constituted an
endorsement in blank, and then the checks were properly
payable to anyone under 13 Pa.C.S. § 3204.[7] What subse-
quently happened to the checks would be irrelevant to the
bank's liability, in appellant's view.

The trial court found that Robinson's authority was limit-
ed to endorsing checks for deposit into the Levy's accounts
at Girard and IVB.[8] It found that neither express nor
implied authority to endorse in blank existed, and that the
endorsements were unauthorized. Lower court opinion at
27.

**6.** 13 Pa.C.S.A. § 3419 is identical to Uniform Commercial Code
§ 3–419. The Pennsylvania Bar Association notes to the UCC are
found in 12A Pa.S.A., as are the comments of the UCC's drafters.

**7.** 13 Pa.C.S. § 3204(b) (Purdon's 1984 Pamphlet):
(b) Blank endorsement.—An endorsement in blank specifies no
particular endorsee and may consist of a mere signature. An
instrument payable to order and endorsed in blank becomes pay-
able to bearer and may be negotiated by delivery alone until
specially endorsed.

**8.** Under 13 Pa.C.S. § 1103 (Purdon's 1984 Pamphlet), the principles of
agency that existed before the enactment of the UCC supplement the
UCC's provisions. The law of agency of Pennsylvania is therefore
applicable here.

 Under Pennsylvania law, the issue of agency is for the finder of fact. *Breslin by Breslin v. Ridarelli*, 308 Pa.Super. 179, 454 A.2d 80 (1982). Here, the court, as finder of fact, concluded that Robinson had no authority to endorse the checks as he did. When a finding of fact is adequately supported by the record, we will not overrule the trial court. *Spatz v. Nascone*, 283 Pa.Super. 517, 424 A.2d 929 (1981). The record indicates that the Levys told Robinson to deposit the checks in their accounts. N.T. at 47.2–48.2. Accordingly, we do not disturb the court's finding.[9]

 The question remains as to whether an *unauthorized* endorsement is the same as a *forged* instrument under 13 Pa.C.S. § 3419. Although no court in the Commonwealth has held on this point, to our knowledge, other courts have held that "forgery" under UCC § 3–419 includes "unauthorized signature."[10] We conclude that an unauthorized signature is the same as a forgery for purposes of an action for conversion under 13 Pa.C.S. § 3419. The trial court properly found the bank liable for paying the checks to Robinson.[11]

**9.** Appellant characterizes the endorsements as "blank," making the instruments payable to the bearer, Robinson. We disagree. Under 13 Pa.C.S. § 3205(3) (Purdon's 1984 Pamphlet), the endorsements were restrictive, authorizing the bank only to pay the checks into *Robinson's* account. 13 Pa.C.S. § 3206(c) (Purdon's 1984 Pamphlet). Robinson certainly lacked authority to make such restrictive endorsements.

**10.** *See Aetna v. Hepler*, 6 Kan.App.2d 543, 630 P.2d 721, 23 A.L.R.4th 841 (1981); *Top Crop Seed & Supply Co., Inc. v. Bank of Southwest Louisiana*, 392 So.2d 738 (La.App.1980); *Equipment Distributors, Inc. v. Charter Oak Bank and Trust Co.*, 34 Conn.Supp. 606, 379 A.2d 682 (1977). *See also* 6 R. Anderson, Uniform Commercial Code § 3–419: 40 at 439 (3d ed. 1984) and Annot., 23 A.L.R.4th 855 (1983).

**11.** The trial court based its holding in part on the definition of forgery under Pennsylvania law:

**(a) Offense defined.**—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize the act, or to have been executed at a time or place or in a

■ Appellant also argues that 7 P.S. § 6393 (Purdon's 1984–85 Supp.) shelters it from liability. Under this section of the Uniform Fiduciaries Act, a bank is relieved of the burden of inquiry when a fiduciary makes a deposit to his personal credit of checks payable to the principal.[12] The court below noted, however, that Robinson had no power to endorse the checks as he did, and the section relieves banks of liability only when the fiduciary has the power to endorse. Lower court opinion at 21. We agree with the lower court that 7 P.S. § 6393 does not shield the bank from the consequences of its acts.[13]

> number sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.
> 18 Pa.C.S. § 4101 (Purdon's 1983).
> The crime of forgery appears to include the making of unauthorized signatures. Since forgery is nowhere defined in the Uniform Commercial Code, we take guidance from the criminal code in concluding that, for purposes of a conversion action brought under § 3419, "forgery" includes "unauthorized signature."

**12. § 6393. Deposit in fiduciary's personal account**
> If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary; or of checks payable to him as fiduciary; or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw checks thereon; or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks; or if he otherwise makes a deposit of funds held by him as fiduciary,—the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

**13.** The court below held that because Robinson had no power to endorse the checks as he did, that is, restrictively, the UFA did not protect the bank. In light of the Supreme Court's holdings in *Strong v. City National Bank of Philadelphia*, 355 Pa. 390, 50 A.2d 323 (1947) and *Bacher v. City National Bank of Philadelphia*, 347 Pa. 80, 31 A.2d 725 (1943), we feel we must address the lower court's holding.

In *Bacher*, the dishonest lawyer had signed the check at issue "Estate of Anna Hoffman/William J. Ballen/Attorney." He then

The bank also maintains that the law firm should have been found liable for Robinson's acts, and, on that basis, the

deposited the check into his personal account at the bank. The Supreme Court held that the UFA protected the bank, since the attorney was a fiduciary and had the power to endorse checks. The fact that he had endorsed a check for deposit into his personal account did not mean his power was non-existent. As long as the attorney had had any power at all to endorse checks, he had the "power to endorse" required under the UFA, the Court held. The bank having a valid defense in the UFA, the Court found that the estate's motion for summary judgment had been granted improperly.

In the later case, *Strong*, the Court held that the UFA protected the bank from liability. The Court reasoned that because the attorney was a fiduciary who drew checks on his personal account, which was funded by estate checks improperly deposited there, the UFA shielded the bank.

If we were to accept the lower court's characterization of Robinson's power, our holding clearly would conflict with *Bacher* and *Strong*. The position taken by the lower court, the same as taken by the dissents in *Bacher* and *Strong*, interprets "power to endorse" in a way that comports with this Court's analysis of the nature of the endorsements under the conversion statute, 13 Pa.C.S. 3419.

Because the facts in the case at bar are different from those in *Bacher* and *Strong*, we think our current holding does not conflict with those cases. The endorsement in *Bacher* and *Strong* was different from the one here. The lawyer's signature in *Bacher* and *Strong* specifically called to the attention of parties dealing with the instrument the fiduciary nature of the depositor. In the instant case, the depositor's signature did not indicate a fiduciary relationship. Nothing on the check indicated to the bank that the payee of the check with which it was dealing was protected by the rules and regulations governing fiduciaries' responsibilities toward their principals.

The UFA is designed to shield banks from negligence only when they know that the party before them is acting for another. The Drafters' Prefatory Note specifically states: "The Act covers situations which arise where one person deals with another person whom he knows to be a fiduciary." 7A Uniform Laws Annotated 127 (West 1978).

We cannot believe it would be a fair result to release the bank from liability because of Robinson's fiduciary status when the manner in which the checks were signed did not give the bank notice of that status. The UFA is intended to make easier transactions of a fiduciary nature, by making it unnecessary for banks to check into the power of the fiduciary standing at the teller's window to do what he desires to do. Here, where it cannot be said that the bank knew of the relationship between the payees and the endorser, the bank cannot honestly claim that it goes against the UFA's intent to hold it liable. Making transactions between banks and known fiduciaries easier and faster is a goal we recognize. Making transactions between banks and persons who are not known to be fiduciaries risk-free is another goal, one which has not been addressed by the legislature. We decline to make transactions risk-free for the bank in circumstances such as in this case to the extent advocated here.

bank is entitled to contribution or indemnification from the law firm. The trial court found that the law firm was not liable under 59 Pa.C.S. §§ 321, 325 and 326 (Purdon's 1984–85 Supp.), and that no right of contribution or indemnification existed.

 The law of indemnity states that when a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another, he may recover from the person who is primarily liable.[14] Our Supreme Court, in *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969), stated:

> Secondary, as distinguished from primary liability, rests upon a fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law . . .

*Id.*, 433 Pa. at 327, 249 A.2d at 565.

The bank argues that it is being required to pay damages, and that the loss is based on a positive rule of statutory law, § 3419. It argues that it was not primarily at fault, and that the Commonwealth's partnership statutes, 59 Pa. C.S. §§ 325, 326 and 327, impose liability on a partnership for wrongful acts of a partner.[15] The bank argues that the partnership statutes require the partnership, not the bank, to pay the loss.

The statutes in question would appear to impose liability on a partnership, and on the individuals comprising the partnership, without regard to fault when a partner causes a client's loss:

---

**14.** The bank argues that if indemnity is not allowed, contribution should be permitted. Contribution is appropriate only in situations where the parties are joint tortfeasors. See *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979). Since the partnership has done no wrong, it cannot be held liable in contribution.

**15.** These are §§ 13, 14 and 15 of the Uniform Partnership Act.

### § 325. Wrongful act of partner

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to that person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

### § 326. Breach of trust by partner

The partnership is bound to make good the loss:

(1) Where one partner, acting within the scope of his apparent authority, receives money or property of a third person and misapplies it.

(2) Where the partnership in the course of its business receives money or property of a third person, and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

### § 327. Nature of liability of partner

All partners are liable:

(1) Jointly and severally, for everything chargeable to the partnership under section 325 (relating to wrongful act of partner) and section 326 (relating to breach of trust by partner).

(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

59 Pa.C.S. § 325, 326 and 327 (Purdon's 1984–85 Supp.).

 In our opinion, these are not statutes of strict liability. They are statutory causes of action derived from the respondeat superior theory of recovery. See *First National Bank of Altoona v. Turchetta,* 407 Pa. 511, 181 A.2d 285 (1962) (holding partnership liable for forgeries); *Blackmon v. Hale,* 1 Cal.3d 548, 83 Cal.Rptr. 194, 463 P.2d 418 (1970) (partnership liable for embezzlement by partner); *Cook v. Brundidge, Fountain, Elliot and Churchill,* 533 S.W.2d 751 (Texas 1976) (partnership liable). The statute appears to place the partnership in the position of an insurer, and guarantees that the innocent client will not bear the loss.

 Therefore, the particular statutes at issue do not mean that the partnership has done a wrong when a partner does a wrong. It requires the partnership to reimburse the innocent client, and permits the partnership to recover its loss from the truly guilty party. The bank cannot use the Uniform Partnership Act to recover from the partnership for its own negligence.[16]

Finally, appellant bank argues that the court below erred in awarding damages for delay at the rate of 10 percent. Appellant argues that 6 percent is appropriate, and that the court's determination was based incorrectly on the rate specified in Pa.R.Civ.P. 238, which applies to personal injury claims.

 The rate of interest in damages for delay, as well as the decision as to its award, is in the discretion of the trial court. *Sack v. Feinman*, 495 Pa. 100, 432 A.2d 971 (1981). The court below found that damages for delay, at a rate of 10 percent of the judgment, were necessary to make the injured parties whole. Lower court opinion at 26. The rate of 10 percent, termed "realistic" by the court, was

---

**16.** It would appear from an examination of 13 Pa.C.S. § 3419 and 59 Pa.C.S. §§ 325, 326 and 327 that they are alternative ways for the Levys to recover their lost funds. Section 3419 is a statutory cause of action derived from the tort of conversion, while sections 325, 326 and 327 are statutory causes of action derived from the tort theory of respondeat superior.

Here, where the plaintiff may recover from either bank or law firm by statute, as well as from Richard Robinson under the common law, it would be unfair for the loss to fall on only one of two statutorily liable parties simply because of the plaintiff's litigation strategy. Therefore, we note here, as in our opinion, that while under §§ 325, 326 and 327, the law firm acts as an insurer to the client for any losses occasioned by a partner's misdeeds, the law firm ordinarily can recover from the bank in circumstances like the one at hand.

It seems clear that if a partner were to embezzle from a client, the firm could be required to reimburse the client under the partnership statutes and then could proceed against the partner or the bank in indemnity. It is plain that the law firm's liability would be constructive only.

It also should be noted that the bank, under 13 Pa.C.S. § 3404(a), has a cause of action against Richard Robinson, and so the final loss, no matter what litigation strategy is pursued, will lie on the original tortfeasor.

apparently arrived at by the court's examination of yields for money market funds. Record at 451a–452a. The determination does not appear to us to be an abuse of discretion, and we affirm the award of damages for delay.

Affirmed.