522 A.2d 503

Walter JONES, Appellee,

v.

David VAN NORMAN and Mary Ellen Van Norman, his wife, Appellees,

and

First Valley Bank, Appellant.

Supreme Court of Pennsylvania.

March 10, 1987.

Reargument Denied May 27, 1987.

Hutchinson, J., filed dissenting opinion.

McDermott, J., noted dissent.

John Molnar, Bangor, for appellant.

Ronald J. Karasek, Bangor, for Van Normans.

Sandor Engel, Allentown, for Walter Jones.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

LARSEN, Justice.

In this appeal we are faced with an issue of the liability of appellant First Valley Bank (First Valley) under Section 3-419 of the Uniform Commercial Code (U.C.C.) for conversion of four checks of appellee, Walter Jones (Jones). The checks in question were negotiated at First Valley by appellee, Mary Ellen Van Norman. Jones filed suit against appellees, David Van Norman and Mary Ellen Van Norman and appellant, First Valley Bank. The Northampton County Common Pleas Court, in a non-jury trial, found that Mrs. Van Norman was authorized by Jones to receive certain of his checks and endorse his name to those checks. The trial court found further that Mrs. Van Norman was instructed by Jones to deposit the checks in Jones' bank account at Manufacturers Hanover Bank in New York. Instead of depositing them in Jones' bank account as instructed, Mrs. Van Norman took the checks to First Valley where she received some cash and deposited the balance in her and her husband's personal account. The lower court, concluding that the case involved a misappropriation of funds by an authorized agent, declined to find liability on the part of First Valley.[1] On appeal by Jones and the Van Normans,[2] the Superior Court reversed, citing its decision in *Levy v. First Pennsylvania Bank*, 338 Pa.Super. 73, 487 A.2d 857 (1985) as controlling, and held that Mrs. Van Norman's action in signing Jones' name and depositing the checks in her personal account was unauthorized, and therefore, for purposes of this action in conversion, was the same as forgery. The Superior Court concluded that First Valley was liable for paying the checks to Mrs. Van Norman on forged or unauthorized endorsements unless First Valley

1. The trial court found liability on the part of the Van Normans only.
2. The Van Normans appealed from the judgment on their counterclaim and also from the order in an equity action for an accounting brought against Jones.

had a defense.[3]  A new trial was ordered, 343 Pa.Super. 348, 494 A.2d 1119.  We granted First Valley's petition for allocatur.

The appellee Walter Jones owned and operated an interstate boiler installation and repair business.  His business involved extensive travel, primarily in the east and mid-west regions of the United States.  In or about 1978, appellee David Van Norman was employed to work for Jones.  Several months after he was hired, Jones and David Van Norman agreed that they would continue as employer and employee but the method of compensating Van Norman was changed.  Instead of an hourly wage or a salary, it was agreed that David Van Norman would receive fifty (50%) percent of the net profits on each job.  He also was to be reimbursed for expenses.

Jones lived in Brooklyn, New York and did his banking there.  When he was traveling and working in other states, there was no one in New York to handle his mail and make bank deposits.  Because of this, checks that were sent to him by customers would stay undeposited until he returned.  Apparently, this lag between receipt of customer checks and their deposit into Jones' bank account presented a cash flow problem for Jones.  After discussing this problem with David Van Norman and David's wife Mary Ellen, Jones reached an agreement with Mrs. Van Norman that she would become involved in handling certain transactions for Jones.  Jones notified customers to send their checks to the Van Normans' address in Bangor, Pennsylvania.  Mary Ellen Van Norman was authorized to endorse Jones' name to the checks she received and deposit them in Jones' New York bank account.  Jones furnished Mrs. Van Norman with a supply of deposit slips for that purpose.  It is unclear whether Mrs. Van Norman ever deposited any

3.  The Superior Court concluded that since the trial court declined to find First Valley liable, there were issues raised in the pleadings that were not considered.  Those issues included, inter alia, First Valley's allegation of defense that if it was found that the endorsements were forgeries, Jones was negligent and his negligence contributed to the alleged forgeries.  (See 13 Pa.C.S. § 3406.)

checks in Jones' account. It is clear though that there were four checks that Mary Ellen Van Norman did not deposit in Jones' New York account as instructed. Rather, she applied those checks for the use and benefit of her and her husband.

The first of these checks was dated May 15, 1979, issued by Helicopter Applicators, Inc. in the sum of $1,800.00; the next was dated July 7, 1980, issued by Tabor Products Manufacturing Co. in the sum of $5,856.50; the next was dated November 12, 1980, issued by Highland Fashions, Ltd. in the amount of $1,195.00; and the last was dated December 4, 1980, issued by Southern Athletic in the sum of $2,027.08. As to the check issued by Helicopter Applicators, Inc., Mrs. Van Norman endorsed the name of Walter Jones and then signed her husband's name directly below. She took that check to First Valley where she received some cash and deposited the balance in her and her husband's account. Since Mrs. Van Norman requested some cash from First Valley when she presented the check drawn on the account of Helicopter Applicators, Inc., she was questioned by the head teller. Mrs. Van Norman told the teller that there was a partnership type arrangement with Walter Jones. That Jones coordinated and set up jobs that he and David Van Norman worked on together. Based upon the information given and a ten-year history of the Van Normans as good and reliable customers of the bank, the head teller authorized the transaction. (See N.T., p. 70.) As to the other three checks, Mrs. Van Norman signed Jones' name and then her own below his. When the checks drawn on the accounts of Tabor Products and Highland Fashions were presented to First Valley by Mrs. Van Norman, she likewise requested some cash. In each instance she was questioned by the head teller. In each instance the transaction was approved based upon the same information and for the same reasons as the first check was approved. The last check from Southern Athletic was totally deposited in a personal savings account.

In late 1980 several checks Jones had written on his Manufacturers Hanover account were returned because of insufficient funds. Jones contacted several customers who he believed had paid him. Among the customers he contacted were Helicopter Applicators, Tabor Products, Highland Fashions and Southern Athletic. He obtained photocopies of the check remitted by those customers. He learned that the checks had been deposited in a bank in Penn Argyl, Pennsylvania. After contacting Mrs. Van Norman and discussing her handling of the checks in question, Jones filed suit against the Van Normans and First Valley seeking recovery of $10,878.50, the sum of the four checks. In his complaint Jones alleged that the endorsement of his name on each of the checks was not genuine and was a forgery. Jones based his theory of liability against the appellant, First Valley, upon Section 3–419 of the U.C.C. which, in pertinent part, provides:

(a) Acts constituting conversion.—An instrument is converted when:

(1) a drawee to whom it is delivered for acceptance refuses to return it on demand;

(2) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(3) it is paid on a forged indorsement.

13 Pa.C.S.A. § 3419.

The Common Pleas court found that David and Mary Ellen Van Norman were liable to Jones,[4] but declined to enter a verdict against First Valley. The lower court determined that since Mary Ellen Van Norman was authorized to sign Jones' name to the checks, the endorsements did not

4. In response to the suit filed by Jones the Van Normans filed an Answer, New Matter and Counterclaim. In the Counterclaim, the Van Normans alleged that Jones owed David Van Norman $47,160.59 as monies due for his one-half of the net profits, for reimbursement of expenses, and for the decline in value of a Ford truck used for the business. The trial court found that Jones did owe some money to David Van Norman and concluded that the Van Normans were liable to Jones for the proceeds of the four checks less a credit for the sum owed by Jones to David Van Norman. A judgment in the sum of $6,000.00 was entered in favor of Jones and against the Van Normans.

constitute forgeries. The Superior Court, relying upon its decision and reasoning in *Levy v. First Pennsylvania Bank*, 338 Pa.Super. 73, 487 A.2d 857 (1985), reversed the trial court's judgment and remanded for a new trial.

In *Levy*, the plaintiffs, Sidney and Frieda Levy sold their business, Novelty Printing. At the time of the sale they authorized their attorney to take the proceeds of the sale and open an account for them at a local brokerage house in the name of B & J Corp. which was to be the Levy's new business. With the funds, the broker purchased Treasury Bills on the account of the Levys. When the Treasury Bills matured the Levys instructed their attorney to receive the proceeds from the broker and deposit them into Levys' bank accounts at Girard Bank and at Industrial Valley Bank. The attorney received three checks totaling $222,776.87 from the broker. The payee of two of the checks was Novelty Printing Company Profit Sharing Trust. The third check was payable to the order of B & J Corp. The attorney signed the back of each check with the name of the payee and added the notation "deposit to account No. 973–784–4." The number written was the attorney's personal account number. All of the monies were applied by the attorney for the attorney's own benefit. The trial court in *Levy* found that the attorney's authority was limited to endorsing the checks for deposit into Levys' bank accounts at Girard Bank and Industrial Valley Bank. That court concluded that the restrictive endorsements he actually made, therefore, were unauthorized.

On appeal, the Superior Court determined that the trial court's finding that the endorsements were unauthorized was supported by the record. The court then considered the question of whether the unauthorized endorsements constituted forgeries under Section 3–419 of the U.C.C. The Superior Court in *Levy* concluded that "an unauthorized signature is the same as a forgery for purposes of an action for conversion under 13 Pa.C.S.A. § 3419." The

First Pennsylvania Bank was held to be liable to the Levys for paying the checks to the dishonest attorney.[5]

In the present case, the Superior Court found that the holding in *Levy* was controlling as to the liability of First Valley for paying the checks to the Van Normans. The Superior Court stated:

> Because Mrs. Van Norman was authorized to endorse checks with Jones' name for one purpose does not mean that she had unlimited power to sign his name for other purposes. It is clear that Mrs. Van Norman's authority to endorse Walter Jones' name was limited to endorsing checks payable to Jones in order to deposit those checks into Jones' New York bank account. Mrs. Van Norman did not have authority to endorse checks with Jones' name in order to deposit those checks into her personal account at a different bank, or to cash those checks at any bank. Thus, her conduct in signing Jones' name to achieve such a purpose was unauthorized. Under the holding in *Levy*, her unauthorized signature was the same as a forgery for purposes of an action for conversion instituted against First Pennsylvania Bank.

The appellant, First Valley, argues that the Superior Court's holding announced in *Levy* and applied in the present case imposes an unreasonable burden on appellant, and on banks generally, to bear responsibility for the misconduct of authorized agents who deviate from the instructions of the principal. Appellant points out that the Uniform Commercial Code specifically provides for a signature by an authorized representative. Section 3–403(a) of the U.C.C. provides:

> **(a) General rule.**—A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

13 Pa.C.S.A. § 3403(a). The appellant contends that the authority granted to Mrs. Van Norman in this case is in

---

**5.** Allocatur was granted in *Levy v. First Pennsylvania Bank, supra,* and the case is now on appeal awaiting argument in this Court.

accord with the general rule set forth in Section 3–403 of the U.C.C.

The appellant's argument is predicated upon the authority given to Mary Ellen Van Norman to sign Jones' name to the checks sent to her. Jones saw fit to direct his customers to send their payments to the Van Normans in Bangor, Pennsylvania. He found it convenient and appropriate to vest Mrs. Van Norman with the authority to receive those checks and endorse his name to them. Since the endorsements on the checks in question were authorized by Jones, they cannot be the equivalent of forgeries as determined by the Superior Court. We agree with the lower court that it was not the signing of Jones' name that was unauthorized. Rather, it was the cashing of the checks and the depositing of the proceeds into Van Normans' personal account that constituted the wrongful acts. It is obvious that the misappropriation of the checks was unauthorized. The misappropriations, however, did not convert authorized endorsements into forgeries. The signing of the payee-principal's name on the check is either authorized or it is not. That status does not depend upon whether the authorized representative properly applies the checks to the account of the payee or misapplies them to his own use.

The appellee argues that the principle established by the Superior Court in *Levy* and applied in the instant case is accepted law in several other jurisdictions. In support of this proposition the appellee refers us to *Levy* and the cases cited therein by the Superior Court: *Top Crop Seed & Supply Co., Inc. v. Bank of Southwest Louisiana*, 392 So.2d 738 (La.App.1980); *Equipment Distributors, Inc. v. Charter Oak Bank & Trust Company*, 34 Conn.Supp. 606, 379 A.2d 682 (1977); *Hartford Accident & Indemnity Co. v. South Windsor Bank and Trust Co.*, 171 Conn. 63, 368 A.2d 76 (1976); and *Salsman v. National Community Bank of Rutherford*, 102 N.J.Super. 482, 246 A.2d 162 (1968), aff'd 105 N.J.Super. 164, 251 A.2d 460 (1969). We have reviewed these cases and find that in each the signing

of a payee's name to the check or checks in question was without authority.

In *Top Crop Seed*, a traveling salesman, who never had authority to endorse his employer's name to checks, converted company funds to his own use by signing the company name on customer checks and depositing them in his own account. In *Charter Oak*, the name of Equipment Distributors, Inc. was endorsed on a check by a co-payee who did not have authority to sign for the co-payee. In *Hartford Accident*, an insurance broker endorsed Hartford's name to a check payable to Hartford and then deposited it in his own agency account. It was found that the broker had no express, apparent or implied authority to endorse Hartford's name. Finally, in *Salsman*, Harold Breslow, an attorney, had his administratrix client endorse her name to a cashier's check which he said was to be deposited in the decedent's estate account. After his client signed and left his presence, the attorney wrote under her endorsement, "estate of Arthur J. Odgers—for deposit Harold Breslow, Trustee." Under that his secretary wrote, "For deposit Harold Breslow Trustee." The checks were deposited in the attorney's account and converted to his use.

In each of the above cited cases the lower court found no evidence of authority on the part of the purported representative to endorse the name of the payee. On the contrary, the trial court in the instant case found specifically that Mary Ellen Van Norman was authorized to endorse Jones' name to the checks. That finding is supported by the record.

When Jones authorized Mrs. Van Norman to endorse his name to checks and gave her instructions to deposit the checks in his bank account, he assumed the risk of her competence and honesty. First Valley in paying Mrs. Van Norman on the four checks she endorsed with Jones' name assumed the risk that the signature of Jones was authorized.[6]

6. Although counsel for appellant First Valley failed to raise and brief the provisions of the Uniform Fiduciaries Act in support of appellant's

position, we note that Section 9 of the Uniform Fiduciaries Act, 7 P.S. § 6393, provides as follows:

If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary; or of checks payable to him as fiduciary; or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw checks thereon; or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks; or if he otherwise makes a deposit of funds held by him as fiduciary,—the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith. 1923, May 31, P.L. 468, § 9.

Section 1 of the Act, 7 P.S. § 6351 defines fiduciary to include an "agent." *Bacher v. City National Bank of Philadelphia,* 347 Pa. 80, 31 A.2d 725 (1943). In *Bacher,* an administratrix of a decedent's estate gave her attorney the authorization "to collect any and all monies due the said estate, and to endorse any and all checks payable to ... administratrix of the said estate, and to deposit the funds so collected on his attorney's account." The attorney received the cash and deposited them in his personal account. He used the funds by writing personal checks on his account. We said there that: "[U]nder Section 9 of the Act, it is provided that, unless the bank has actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary, it is justified, if the fiduciary is empowered to endorse checks payable to his principal, in accepting them as a deposit to his personal credit." The summary judgment entered by the trial court in favor of administratrix Bacher was reversed. The case went back to the lower court for trial.

The Bacher case again came before us, under the caption *Strong v. City National Bank of Philadelphia,* 355 Pa. 390, 50 A.2d 323 (1947). In *Strong,* the lower court, after hearing the evidence, entered a judgment in favor of the administratrix and against the bank on the theory that the bank had no knowledge of the attorney's authority to endorse the checks and therefore, absent this knowledge, the bank was not protected by the Uniform Fiduciary Act. We held that the lower court was in error and said:

The bank, as provided in section 9 of the Act, was authorized to pay the amount of the deposits on [the attorney's] personal checks unless it had actual knowledge of the limitations of his authority in that regard, but its knowledge or lack of knowledge as to his right to indorse the checks was wholly immaterial. The condition prescribed by the Act as necessary to relieve the bank from liability is that the fiduciary must *in fact* have been empowered to indorse the checks, not that the bank must have known that he had such authority. As stated in our former opinion: "When it accepted the deposit to [the attorney's] personal credit the only risk it took ...

The liability of First Valley for conversion under Section 3–419 of the U.C.C. depends upon a finding that the checks were paid on unauthorized or forged endorsements. Since Mrs. Van Norman was given authority by Jones to endorse his name and there was no evidence that the bank had knowledge of the limiting instructions given to Mrs. Van Norman, First Valley is not liable to Jones for paying the checks to Mrs. Van Norman.

Next before us is the issue of the Van Normans' right to a jury trial. One of the alleged errors before the Superior Court was the trial court's denial of the Van Normans' request for a trial by a jury. The trial court held that the right to a jury trial was waived because of the failure to make a timely request in accordance with the provision of Pa.R.C.P. 1007.1(a).[7] The Van Normans first made a request for a jury trial when they filed a written pre-trial memorandum. The pre-trial memorandum was required by the local rules. The Van Normans argue that their request complies with Pa.R.C.P. 1007.1(a) in that the pre-trial memorandum is a permissible pleading. They further argue that there would be no prejudice in granting a jury trial since at

was that [the attorney] might not have been authorized to indorse the checks; if no such authorization had existed, the bank clearly would have been liable for paying out funds on the basis of an unauthorized indorsement of the payee's name. But [the attorney] did have the power to indorse, and if the bank did not actually know that he had been directed to deposit the checks in his attorney's account it would not be liable because of his violation of this instruction and his misappropriation of the funds after receiving them upon his authorized indorsement; ..." [the attorney's] power to indorse depended on his possession of such authority and not on the bank's knowledge as to whether or not it existed: (Citations omitted.) Since he actually had the authority to indorse, the bank, by the express wording of the Act, was permitted to pay the amount of the deposits on his personal checks unless it had knowledge— which the court below found it did not have—of the provision in the power of attorney designating the account in which the checks should be deposited. (Emphasis in original.)

7.    (a) In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty (20) days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing. Pa.R.C.P. 1007.1(a).

the time of their request, discovery was still outstanding and the trial date was at least three months away.

The Superior Court did not consider this issue and the arguments offered. It was merely noted that the remand for a new trial ordered by that court was "without prejudice to the right of the Van Normans to renew their request for a jury trial."

Although it would be procedurally correct to remand this case to the Superior Court for consideration of the "jury trial question" raised, in the interest of judicial economy, and because the Van Normans' position is clearly meritless, we now decide this issue.

■ The pre-trial memorandum filed by the Van Normans did not constitute a permissible pleading under Pa.R.C.P. 1007.1(a). The pleadings allowed by the Rules of Procedure are set forth in Pa.R.C.P. 1017(a) as follows:

(a) The pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection and an answer thereto.

■ The record is clear that the Van Normans' demand for a jury trial, first asserted in their pre-trial memorandum, was made more than twenty days after the last permissible pleading and, therefore, failed to satisfy the requirements of Rule 1007.1(a). Accordingly the lower court correctly held that a jury trial had been waived. In addition, considerations of prejudice to the other side play no part in enforcing a waiver of a jury trial where the provisions of Rule 1007.1(a) have not been met.

The order of the Superior Court is reversed and the judgment of the trial court reinstated.

HUTCHINSON, J., filed a dissenting opinion.

McDERMOTT, J., notes a dissent.

HUTCHINSON, Justice, dissenting.

I respectfully dissent. I believe appellant converted the instruments payable to appellee Walter Jones because Mrs. Van Norman's endorsement of Walter Jones's name was unauthorized and, therefore, a forgery under Section 3–419(a) of the Uniform Commercial Code as adopted by our Legislature. 13 Pa.C.S. § 3419(a). On this difficult issue of first impression in Pennsylvania, the majority's analysis seems to me to misconstrue our agency law, and to place an inappropriate emphasis on form over substance. Moreover, employment of the majority's analysis leads to different results in two situations where the facts are substantially the same.

I believe Mrs. Van Norman's endorsement of Walter Jones's name was unauthorized because her authority to endorse Walter Jones's name was limited to an endorsement "for deposit only." There was no authority for an endorsement *in blank*, and it is not logical to imply it. Furthermore, there was no basis for apparent authority and no indicia sufficient to create an estoppel. Therefore, the *in blank* endorsement of Walter Jones's name was unauthorized.

I

This case deals with the interpretation of Section 3419 of Pennsylvania's Commercial Code. It states:

(a) Acts constituting conversion.—An instrument is converted when:

(1) a drawee to whom it is delivered for acceptance refuses to return it on demand;

(2) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(3) it is paid on a forged [e]ndorsement.

13 Pa.C.S. § 3419(a). Under this statute, if a bank cashes a check upon which the endorsement was forged, it is liable to the true owner for conversion. This follows logically from the definition of a holder, including a holder in due course, as one who receives an instrument endorsed to his order, or

in blank. If there is no valid endorsement, there is no acceptance. Therefore, when a bank pays on a forged endorsement "even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." 13 Pa.C.S. § 3419 comment 3.

An unauthorized endorsement constitutes a forgery for the purpose of Section 3419(a)(3). This is an issue that has arisen in numerous jurisdictions which hold that the words "forged [e]ndorsement" in Section 3419 were intended to include unauthorized endorsements.

The Code does not define forgery. It does define an unauthorized endorsement as an "[e]ndorsement made without actual, implied or apparent authority and *includes a forgery.*" 13 Pa.C.S. § 1201 (emphasis supplied). Furthermore, the Code states that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it...." 13 Pa.C.S. § 3404(a). As with a forgery, if a bank pays an instrument on an unauthorized endorsement, then it has exercised "dominion and control over the instrument inconsistent with the rights of the owner." 13 Pa.C.S. § 3419 comment 3. Both the objective of the drafters of the Code and the Code's internal consistency are furthered by including unauthorized endorsements under Section 3419(a)(3).

All the courts in other jurisdictions that have dealt with this issue have held that an unauthorized endorsement is the same as a forgery for the purpose of Section 3-419 of the Uniform Commercial Code.[1]

The basic reasoning for this rule is well summarized in 6 R. Anderson, Uniform Commercial Code § 3-419:18(d) at 428 (3d ed. 1971):

---

1. *See, e.g., Aetna Casualty and Surety Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721 (1981); *Equipment Distributors, Inc. v. Charter Oak Bank and Trust Co.,* 34 Conn.Supp. 606, 379 A.2d 682 (1977). *See also* 6 R. Anderson, Uniform Commercial Code § 3–419: 40 at 439 (3d ed. 1984) and Annot., 23 A.L.R.4th 855 (1983). *See also Top Crop Seed and Supply Co., Inc. v. Bank of Southwest Louisiana,* 392 So.2d 738 (La.App.1980).

If the instrument is paid on an unauthorized [e]ndorsement, such act of payment is a conversion. That is to say, Code § 3–419 is to be interpreted so that payment under an unauthorized signature is a conversion even though the signature may not be a technical forgery, for the reason that with respect to the transfer of title there is no difference between a forgery and an unauthorized [e]ndorsement.

It is well accepted law, therefore, that a bank will be liable if it pays a check on either a forged or unauthorized endorsement. To this extent, the majority and I are in agreement. *See* Majority at 583.

## II

The question presented in this case, however, is what constitutes an unauthorized endorsement. The Code defines an unauthorized endorsement as one made without actual, implied or apparent authority. 13 Pa.C.S. § 1201.

The Code expressly provides its terms can be supplemented by the underlying common law unless a particular provision expresses otherwise. 13 Pa.C.S. § 1103. The underlying common law in the area here involved is agency. In agency law, express and implied authority are different, but are both included in the more general term actual authority. However, it is important not to confuse implied with apparent authority.

Express authority exists where the principal directly states that an agent has the authority to perform a particular act on the principal's behalf. *Hartley v. Robena Local Union No. 6321*, 2 Pa.D & C.2d 1, *aff'd per curiam*, 381 Pa. 430, 113 A.2d 239 (1955) (based on reasoning of Common Pleas Court opinion). Express authority is to be strictly construed. *Fierst v. Commonwealth Land Title Insurance Co.*, 499 Pa. 68, 451 A.2d 674 (1982).

When an agent is given express authority, he also acquires, in addition, the *implied authority* to do all that is proper, necessary and ordinary to exercise the authority that has expressly been granted to him. *Hartley v. Robena*

*Local Union No. 6321,* 2 Pa.D & C.2d at 15. Such implied authority is actual authority based on the premise that the principal reasonably would want the act done in order to accomplish the express purpose of the agency.

Apparent authority also flows from the conduct of the principal, but focuses on the reasonable expectations of the party with whom the agent deals. If the agent has not been granted express authority and no authority can be implied from the principal's express statements, nevertheless, acts or omissions by the principal which lead a reasonably prudent person to believe such authority had been given to the agent, causes us to treat the matter as if authority had actually been granted. *Capetola v. Orlando,* 463 F.Supp. 498 (E.D.Pa.1978); *Jennings v. Pittsburgh Mercantile Co.,* 414 Pa. 641, 202 A.2d 51 (1964). A doctrine similar to apparent authority is agency by estoppel. Where a principal intentionally or negligently causes a third party to rely on the belief that an agent has the authority to act on the principal's behalf, the principal is estopped from contending that the agent had no such authority if the third party changed his position based on that belief. *See, e.g., University Mktg. and Consulting, Inc. v. Hartford Life and Accident Ins. Co.,* 413 F.Supp. 1250 (E.D.Pa.1976). As this Court has noted, a principal who clothes his agent with apparent authority is estopped from denying such authority. *Turnway Corp. v. Soffer,* 461 Pa. 447, 336 A.2d 871 (1975). However, authority by estoppel is not precisely the same as apparent authority, and it can be applied where the formalities necessary for apparent authority do not exist if detrimental reliance has occurred. *See* Restatement (Second) of Agency § 8B (1958). Section 3404(a) of the Code seems to include estoppel by its use of the term "precluded."

Applying these general rules of agency law to negotiable instruments, courts have held that where an agent is expressly authorized to endorse a principal's name only in some restrictive form, such as, "for deposit only," a blank endorsement is unauthorized if used for another purpose,

and the agent's receipt of proceeds under it is a conversion. *See, e.g., Strong v. Missouri-Lincoln Trust Co.,* 263 S.W. 1038 (Mo.App.1924); *Standard Steam Specialty Co. v. Corn Exchange Bank,* 220 N.Y. 478, 116 N.E. 386 (1917). On the other hand, where an agent had the express authority to endorse *in blank,* even though the agent also had a duty to return the funds to the principal, we have held that such an endorsement was authorized, and therefore the bank was not liable for the agent's subsequent misappropriation of the funds. *Safe Deposit and Trust Co. v. Diamond National Bank,* 194 Pa. 334, 44 A. 1064 (1900). *See also Cluett v. Couture,* 140 App.Div. 830, 125 N.Y.S. 813 (1910).

In *Safe Deposit, supra,* it was found that an administrator had authority to endorse a check as administrator, without restriction. The facts of that case also show that he had the authority to deposit the negotiated checks into his personal account. We reasoned that since he had actual authority to deposit the checks in his personal account, it was too burdensome to require the bank, without notice that he was using trust money, to reject checks drawn on his personal account.

## III

In the instant case, the trial court, as fact-finder, found that Mrs. Van Norman was authorized to endorse Walter Jones's name for the sole purpose of depositing the checks into his New York bank account. The trial court stated; "[t]he testimony leaves no doubt that [Walter Jones] authorized Mary Van Norman to accept his checks, act for him by affixing his name, and depositing the checks into his New York account." Common Pleas slip op. at 5. In other words, the trial court found that Mrs. Van Norman was authorized to do whatever was necessary in order to deposit the checks into Walter Jones's New York account.[2] If the bank required Mrs. Van Norman to endorse Walter Jones's

2. While the trial court did not specifically find that Mrs. Van Norman was required to sign "for deposit only" when endorsing his name, there is no reason to conclude that the trial court found that Walter Jones expressly stated that Mrs. Van Norman had the authority to

name in order to deposit the checks, then implied authority to endorse had been granted.

The majority reasons that since Mrs. Van Norman had the necessarily implied authority to endorse the checks for the purpose of depositing the checks into his New York account, the endorsement could not be found unauthorized. It goes on to say:

> it was not the signing of Jones' [sic] name that was unauthorized. Rather, it was the cashing of the checks and the depositing of the proceeds into Van Normans' personal account that constituted the wrongful acts. It is obvious that the misappropriation of the checks was unauthorized. The misappropriations, however, did not convert authorized endorsements into forgeries.

Majority at 580. In short, the majority's analysis presumes that an agent who has the implied authority to endorse the

endorse his name *in blank.* On the contrary, the evidence shows that the express authority to endorse was limited to endorsing his name "for deposit only." As noted, the trial court based its finding that the signature was authorized for the purpose of depositing the checks into his New York account on the testimony produced at trial. An exhaustive review of the testimony shows that at no point did any witness state that Mrs. Van Norman had the authority to endorse Walter Jones's name *in blank* and then deposit the checks into his New York account. On the other hand, the following questions were asked by counsel for First Valley Bank:

Q. Now, I assume that you had a trust in both Mr. & Mrs. Van Norman, since you permitted Mrs. Van Norman to sign your name after the word, for deposit only?

R.R. at 114(a).

Q. Okay, Now, sir, it is true that you authorized Mrs. Van Norman to deposit checks in your account, in your account in New York; is that correct, in Manufacturers Hanover?

R.R. at 90(a). The only other statement that relates to the form of the endorsement granted to Mrs. Van Norman for the purpose of depositing in his New York account was made by Walter Jones himself.

A. I approached Mrs. Van Norman, and I said did you make that deposit. She said, yes. I said, how did you make it. She said, I marked it for deposit only and mailed it into New York. I said, there must be some mistake because it has your signature on it and my signature on the top and I never seen that check.

R.R. at 123(a).

Therefore, based on the testimony at trial, it would appear that Mrs. Van Norman was authorized only to endorse Walter Jones's name "for deposit only."

principal's name for a limited specific purpose is authorized to endorse for any purpose.

To ignore the limitations placed upon an agent creates absurd results. Assume that principals A and B each tell their agents to "do whatever is necessary to deposit a check in principal's account." Principal A's bank requires the endorsement of the principal before depositing the check. Principal B's bank does not require such an endorsement, but instead provides a stamp endorsement pursuant to 13 Pa.C.S. § 4205. Each agent endorses his principal's name *in blank* and then his own name. Each then goes to the bank, and has the check deposited into his own account instead of his principal's. In neither case does the bank make an attempt to determine whether the agent had actual authority to deposit the check entrusted to him into his own account.

Under the majority's analysis, principal A's bank would not be liable to other parties to the instrument since his agent would have had the implied authority to endorse the check for the purpose of placing it into his principal's account. However, principal B's bank would be liable since no endorsement would have been necessary to deposit the check. Therefore, while the principals, agents and banks acted in substantially the same manner, two completely different results would occur.

Express authority is to be strictly construed. *Fierst v. Commonwealth Land Title Insurance Co.*, 499 Pa. 68, 451 A.2d 674 (1982). The trial court found that Mrs. Van Norman was expressly authorized to endorse for the sole purpose of depositing the checks into Walter Jones's New York bank account.

There is no evidence that Walter Jones expressly authorized Mrs. Van Norman to endorse his name *in blank* and, since an endorsement *in blank* would not be necessary for her to fulfill the purpose of her agency, such actual authority should not be implied.

If Mrs. Van Norman had signed Walter Jones's name along with the words "for deposit only," it would have been

sufficient to accomplish the purpose of her agency. Therefore, her actual implied authority should be limited to that extent. When she signed his name *in blank,* she exceeded this authority, and the endorsement was unauthorized. Unless the principal *expressly* authorizes his agent to endorse his name *in blank,* I cannot conclude that an endorsement *in blank* is actually authorized by implication when an endorsement "for deposit only" is the extent of the express authority given to the agent.

Postponing for the moment the problems this record poses in terms of endorsements which the Code would treat as if authorized under agency principles of apparent authority or estoppel this analysis of the implied actual authority of an agent expressly authorized to deposit checks in his principal's account is consistent with the common law of agency. It also avoids the illogically disparate result of freeing one bank from liability and holding the other on actual implied authority when the principal's acts and intent are substantially the same. These different results are illogical because actual authority, both express and implied, focuses on the reasonableness of the principal, whereas apparent authority and estoppel focus on that of the third party.

The majority cites no cases which hold that authority to endorse implies authority to endorse *in blank.* The authority for that proposition is discussed herein, at 593, *infra.* The cases the majority does cite are cited and discussed in an effort to demonstrate Superior Court's error in relying on them in its decision in *Levy v. First Pennsylvania Bank,* 338 Pa.Superior Ct. 73, 487 A.2d 857 (1985), the case that Superior Court found controlling here. It is true that the cases the majority cites all involved an absence of any authority to endorse and are thus distinguishable from both *Levy* and the present case. However, they do not affirmatively support an implication of authority to receive funds by blank endorsement from express authority to deposit to the agent's account. The majority does cite *Bacher v. City Nat'l. Bank of Philadelphia,* 347 Pa. 80, 31 A.2d 725 (1943),

a 4–3 decision of this Court holding that the Uniform Fiduciary Act excuses a bank from inquiring into an agent's authority to deal with an instrument. However, it concedes that *Bacher* is not controlling because appellant waived application of the Uniform Fiduciary Act.

It should be noted that one commentator does suggest that the authority to deposit bank checks includes implied authority to endorse *in blank* and receive the proceeds. Bailey, *Brady on Bank Checks,* at 505 (4th ed. 1969). The cases Professor Bailey cites to support this proposition are distinguishable on their facts by either apparent authority, estoppel by agency, or express authority to endorse *in blank.* Indeed, the text writer's assumption that these cases depend on an actual authority necessarily implied for the purpose of accomplishing the agency is illogical. Blank endorsement is not necessary to accomplish the agency because a restrictive endorsement would accomplish its purpose to protect all parties.

Professor Bailey states:

Where, ... the agent is authorized to [e]ndorse checks in blank for the purpose of depositing them to the credit of the principal, or where he is authorized to [e]ndorse for that purpose, and his authority is not limited by any restriction as to the form of the [e]ndorsement, his [e]ndorsement in blank will transfer good title to one who takes the check without notice that he is authorized to [e]ndorse for deposit only.

Bailey, *Brady on Bank Checks,* at 505 (4th ed. 1969).

This analysis puts the burden on the principal to expressly restrict and negate an authority unnecessary to the agency. I believe that approach reverses the usual rules of logical inference. As stated, the cases Professor Bailey cites to support his proposition are explicable on their facts by either apparent authority, estoppel by agency, or express authority to endorse *in blank.*

In *Hartford Accident and Indemnity Co. v. Bear Butte Valley Bank,* 63 S.D. 262, 257 N.W. 642 (1934), cited by Professor Bailey to support his proposition, the principal

furnished an agent with an endorsement stamp that contained no restrictions. The court stated, that the principal is *"estopped* by the acts of the [principal] from denying the authority of [the agent]." *Id.* at 268, 257 N.W. at 645 (emphasis supplied). In *Wedge Mines Co. v. Denver National Bank,* 19 Colo.App. 182, 73 P. 873 (1903), the court found that the agent had the authority to endorse *in blank.* The court noted that it was true that the endorsement was to be used only for the purpose of depositing the checks into the principal's account. But the court found that the bank should not be responsible for this limitation because the bank "had been advised by the previous *course of dealing,* through other checks, many in number, and aggregating a large sum, that the endorsement meant just as it read...." *Id.* at 187, 73 P. at 874 (emphasis supplied).

In other cases cited by Bailey, the courts found that the agent had the *express* authority to endorse *in blank.* In *Palmer & Ray Dental Supply of Abilene, Inc. v. First National Bank of Abilene,* 477 S.W.2d 954 (Tex.Civ.App., 1972), the agent was authorized to use a rubber stamp which stated "Palmer and Ray Dental Supply ..." (principal) without any restrictions. The agent was then instructed to deposit the checks into the bank. In a very short opinion, the court reasoned that this rubber stamp gave the agent the express authority to endorse *in blank. Id.* at 955. Finally, in *Cluett v. Couture,* 140 App.Div. 830, 125 N.Y.S. 813 (1910), the agent was authorized to endorse the principal's checks and place the checks into the principal's account. As in the present case, no particular form of endorsement was prescribed, but it was the custom of the agent to just sign the principal's name *in blank.* The court specifically found that the facts did "not warrant a finding of implied authority" to transfer title to the checks. *Id.* at 832, 125 N.Y.S. at 815. The court reasoned, however, that actual authority existed (apparently express authority), because the agent's "customary way was to write the name Cluett and Sons on the back without further words." *Id.* The court apparently felt that the principal's failure to restrict the endorsement when he became aware that the

agent was endorsing the principal's name *in blank*, gave the agent express authority to endorse *in blank*.[3]

Despite the absence of express or implied authority, the bank here could still seek protection under a theory of either apparent authority or agency by estoppel. These two theories should be addressed in several contexts. First, it must be decided whether a principal, who authorizes an agent to deposit checks, is estopped, *as a matter of law* from bringing an action against the bank if the agent signs the principal's name *in blank* and misappropriates the proceeds. Secondly, it must be decided whether normal banking practice led First Valley Bank to reasonably believe that Mrs. Van Norman had authority to endorse *in blank*, which would protect the bank under a theory of apparent authority. Finally, it must be decided whether Walter Jones permitted Mrs. Van Norman to hold herself out as an agent authorized to endorse *in blank*, either intentionally or through negligence and, therefore, is estopped from bringing this action against the bank.

**3.** The two other cases cited by Professor Bailey are also distinguishable. In *Farmers Union Coop. Association v. Commercial State Bank*, 187 Neb. 376, 191 N.W.2d 168 (1971), a general manager of a cooperative cashed checks made payable to the cooperative. The court found that the trial court did not commit an "error in declining to find or conclude that the [cooperative] had not authorized the transactions." *Id.* at 378, 191 N.W.2d at 170. The court did not say whether its holding was based on either express, implied, apparent authority, or agency by estoppel. It did note, however, that a signature card at the bank authorized withdrawals only by the "general manager" and certain employees in his name, and the court also stated that authority can be inferred. *Id.* at 377, 191 N.W.2d at 169–170. This would appear to be a reference to the basic justification of apparent authority or authority by estoppel.

In *Mills v. Nassau Bank*, 52 Misc. 243, 102 N.Y.S. 1119 (1906), an estate gave an agent a power of attorney, including the authority to receive debts and endorse checks. The court reasoned that granting the power of attorney included the power to cash checks and receive the cash from the bank. Although this case was based on a theory of implied authority, it is distinguishable since the "agent" was granted a general power of attorney.

The early cases often failed to distinguish between express authority, implied authority, apparent authority and estoppel. Indeed, those distinctions, clearly set out in both the original Restatement and Restatement (Second) of Agency, were induced from the early cases as a means of explaining and rationalizing their results.

Here the bank's action in permitting the unauthorized agent to obtain his principal's funds was not caused by its reliance on any authority of the principal. *See Robinson Protective Alarm Co. v. Bolger and Picker,* 512 Pa. 116, 516 A.2d 299 (1986) (Hutchinson, J., concurring). Nevertheless, an argument can be developed that the policy of free negotiability underlying the rights given holders in due course, including banks dealing with checks, would be frustrated if we do not treat Mrs. Van Norman's actions as if authorized as a matter of law under agency principles of apparent authority or estoppel. The Code, as noted, incorporates these principles into its definition of "authorized." *See* 13 Pa.C.S. § 1201 (definition can be inferred through Code's definition of "unauthorized"). I believe, however, the apparent authority argument in terms of unfair burden on the bank as third party fails in the face of other devices available to banks which they and other third parties dealing with checks can easily use to protect against conversion. These devices include restrictive endorsements in the absence of indicia of authority commonly acceptable in banking circles. *See* 13 Pa.C.S. § 3205. They also include signature cards, or other writings signed by the principal.

In addition, there are special indications on which a bank could premise the reliance necessary to work an estoppel or preclusion of the principal's ability to defend for lack of actual or apparent authority. They include, for example, course of dealing by the principal, authority or apparent authority for the agent to receive cash, the agent's possession and use of a signature stamp. These types of indicia explain on their facts the cases noted by Professor Bailey for the proposition that authority to deposit bank checks includes implied authority to endorse *in blank* and receive their proceeds. *See* at 594–596 for a discussion of the cases cited by Professor Bailey.

Furthermore, this does not place an undue burden on First Valley Bank in the present case. As the testimony at the trial shows, it decided to cash the first check because it trusted Mrs. Van Norman, not because of any evidence of

her authority to endorse *in blank*. The record also shows that this is normal banking procedure. R.R. at 142(a). If the decision to cash a check is based mainly on the agent's reputation, and there is no other evidence of authority, it is not unreasonable to place the risk of whether that agent actually has the authority to endorse *in blank* on the party who cashes the check against the agent's endorsement. Banks would not have to change their banking practice, and could still seek relief from the agent on whose integrity they relied. I do not believe that our negotiable instruments law protects a bank from liability for honoring an agent's endorsement solely because he had authority to deposit the principal's check in the principal's account.

Because the trial court relied on what I believe is a mistakenly broad and illogical view of this agent's implied authority with respect to endorsements, it never reached the issues of whether normal banking practice led the bank to reasonably believe Mrs. Van Norman had apparent authority *or* whether the principal suffered her to obtain sufficient indicia of authority to estop the principal, Jones, from denying authority when the bank had relied on those indicia by paying the proceeds of the checks to Mrs. Van Norman. On this point, the present record is scanty. However, it does have testimony that in August or September of 1980 Walter Jones became aware that Mrs. Van Norman did not deposit two of the checks into his account. R.R. at 88(a). Yet he never approached the bank, and failed to bring an action for conversion for almost one year. In fact, he kept Mr. Van Norman in his employment until February, 1981. R.R. at 93(a). The trial court should determine whether this evidence, if believed, either alone or together with such other evidence as may be developed is sufficient to create an apparent authority or estoppel in favor of the bank.

For these reasons, I would remand the case to Common Pleas for further proceedings consistent with this opinion. Those proceedings could develop the record as necessary to determine whether apparent authority or estoppel precluded

598

Walter Jones from holding the bank liable for conversion on grounds of forgery.