Botsford, J.
This case arises out of an elaborate embezzlement scheme whereby the defendant, Anthony J. Katter, Jr. (“Katter”), stole over $982,000 while he was employed by the Ashburnham-Westmin-ster Regional School District School Committee (“AWRSD”) as its treasurer and business manager. In its amended complaint, AWRSD alleges, among other things, that Fleet Bank, as the successor-in-interest to the Bank of New England, N.A., (“BNE”) was negligent (Count XIX), liable for conversion (Count XXX), and violated G.L.c. 93A (Count XXI). Fleet now moves for summary judgment pursuant to Mass.R.Civ.P. 56 on Counts XIX, XXX and XXI.[2] For the reasons set forth below, Fleet’s motion for summary judgment is allowed in part and denied in part.
BACKGROUND
The following facts are not in dispute. On or about February 3, 1986, Katter was hired by AWRSD to serve as the school district’s business manager and treasurer. In that capacity, Katter was responsible for the school district's overall business affairs, including but not limited to budget development, internal auditing, and supervising the collection, safekeeping, and distribution of all funds. Katter reported directly to the superintendent of schools. Sometime after being hired, Katter diverted and misappropriated more than $980,000 from AWRSD. On April 2, 1992, Katter was suspended from AWRSD, and on October 22, 1992, he was convicted of larceny.
As part of his embezzlement scheme, Katter opened a checking account in BNE on October 10, 1989; the account, No. 70514-6124, was opened in the name of AWRSD. Despite this fact, the mailing address listed for the account was Katter’s home rather than AWRSD itself.
On January 6, 1991, the Office of the Comptroller of the Currency declared BNE insolvent and appointed the Federal Deposit Insurance Corporation (“FDIC”) as receiver. The FDIC subsequently chartered a new banking association called New Bank of New England (“NBNE”). The FDIC and NBNE entered into a Purchase and Assumption Agreement, effective January 6, 1991, whereby the FDIC assigned substantially all of the assets and a small number of specific liabilities of BNE to NBNE. The claims brought by AWRSD in the present case were not among the liabilities assigned. Rather, AWRSD’s claims, along with the remaining liabilities, remained with the FDIC as receiver of BNE.
NBNE existed as a bridge bank from January 6,1991 until it was dissolved on July 13, 1991. On that same date, the Office of the Comptroller of the Currency appointed the FDIC to serve as Receiver of NBNE. Thereafter, the FDIC, Fleet, and others entered into an “assistance agreement.” Under the terms of the assistance agreement, no liability of the failed BNE which had not been expressly assumed by NBNE passed to or was assumed by Fleet or any of its banking subsidiaries.
DISCUSSION
A. AWRSD’s Negligence Claim
AWRSD’s negligence claim against Fleet is based, in part, on BNE’s alleged conduct in October 1989. In particular, AWRSD alleges that when Katter opened the checking account at BNE on October 19, 1989, BNE was negligent because it failed to obtain the proper authorizations from the school district and allowed Katter to designate his home address on the account. In addition, AWRSD alleges that BNE was negligent in accepting deposits for the BNE account.
Assuming arguendo that BNE was negligent, that negligence claim was never assumed by Fleet when it entered into the assistance agreement with the FDIC on July 12, 1991. In fact, AWRSD’s claims were never transferred to NBNE initially, but were retained by the FDIC. A judge of this court (Hely, J.) granted Fleet’s motion for partial summary judgment on “all claims of plaintiff that are based on conduct occurring before January 6,1991.” In accordance with that decision, Fleet is not responsible for any claims which flow from BNE’s alleged negligent conduct prior to January 6, 1991.
AWRSD also asserts that Fleet was negligent after January 6, 1991 because Fleet continued to allow Katter to sign checks, make deposits and receive *385 statements on the same account he initially established with BNE In October 1989. Fleet’s actions, however, were based on the signature cards and other documents already on file with BNE when Katter first opened the account. Fleet properly relied on these documents supplied by BNE to continue transacting business with Katter, and AWRSD does not provide any evidence to indicate that Fleet should have acted otherwise. Indeed, AWRSD has failed to develop any specific facts which would support an inference, based on probability and not possibility, that Fleet was negligent. In the end, AWRSD has not established a genuine issue of material fact concerning Fleet’s negligence.
The purpose of summary judgment is “to make possible the prompt disposition of controversies on their merits without trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). Here, there is no dispute as to the essential facts. As the moving party, Fleet bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that [it] is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Fleet has met its burden with respect to the negligence claim, and summary judgment is therefore appropriate on Count XIX of the amended complaint.
B. AWRSD’s Conversion Claim
In order to establish a claim for conversion, AWRSD must show that Fleet paid checks over a “forged indorsement." G.L.c. 106, §3-419(l)(c). The parties agree that a “forged indorsement" under §3-419 includes an “unauthorized signature . . . made without actual, implied or apparent authority.” G.L.c. 106, §1-201(43). There is no dispute that as the treasurer and business manager of the school district, Katter had actual authority to receive and indorse checks made payable to the school district. What does appear to be disputed, however, is the factual issue whether Katter’s authority to indorse checks was essentially unlimited — in effect, an authority to indorse “in blank,” see G.L.c. 106, §3-204(2)[3]—or rather was restricted to the power to indorse checks solely for deposit in one of the duly authorized bank accounts opened with the knowledge and approval of AWRSD.[4]
If indeed Katter’s authority was as broad as Fleet argues it was, Katter’s indorsement of checks for deposit in the Fleet account at issue may well have been authorized, and no liability for conversion would attach. See Jones v. Van Norman, 522 A.2d 503, 507 (Pa. 1987). See also Charles A. Hubbard, Inc. d/b/a Allied Adjustment Service v. United States Trust Co., 2 Mass. L. Rptr. No. 5, 95 (June 6, 1994). However, if Katter’s indorsement authority were limited to the indorsement of checks to authorized AWRSD accounts, a different question arises. The Fleet account at issue was in the name of AWRSD, but the evidence in the summary judgment record indicates it was certainly not expressly authorized. If the account was not authorized, there remains a question in my mind whether Katter’s indorsements of checks made payable to AWRSD for deposit into that account might be deemed “unauthorized” and thus forged indorsements for purposes of G.L.c. 106, §3-419.[5] See Kuwait Airways Corp. v. American Sec. Bank N.A., 890 F.2d 456, 460 (D.C. Cir. 1989).[6] This question seems more important than might otherwise be the case because Katter was a public official, exercising authority over public funds. He was bound by the provisions of G.L.c. 71, §16A and c. 41, §35, which limit the authority of treasurers to deal with municipal or school district funds. See Quincy Mutual Fire Ins. Co. v. International Trust Co., 217 Mass. 370, 372-73 (1914).[7]
In sum, I believe that there are disputed factual and legal issues concerning Fleet’s potential liability for conversion under G.L.c. 106, §3-419 which preclude granting summary judgment on this claim. Fleet has defenses to the claim which may be asserted, see id., §3-419(c); c. 106, §3-406, but these are for the factfin-der to weigh. Accordingly, summary judgment on Count XXX of the amended complaint will be denied. Given this result, summary judgment on the claim alleging violation of G.L.c. 93A (Count XXI of the amended complaint) must also be denied at this time.
ORDER
For the foregoing reasons, it is hereby ORDERED that Fleet’s Motion for Summary Judgment on Count XIX (negligence) of the Amended Complaint is ALLOWED and is DENIED with respect to Counts XXX and XXI.

 On September 13, 1993 the plaintiff filed a motion to amend its complaint by adding two counts for conversion against Safety Fund Bank (Count XXIX) and Fleet Bank (Count XXX). The motion was subsequently allowed but it is not clear that the plaintiff has yet served the amended complaint on Fleet. Since Fleet has moved for summary judgment on the plaintiffs amended complaint, however, this court’s decision is based on it.

 General laws c. 106, §3-204(2) defines an “indorsement in blank” as follows:
(2) An indorsement in blank specifies no particular in-dorsee, and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed.

 In my view, the portions of depositions and other materials submitted by Fleet do not establish that Katter enjoyed the power to indorse “in blank,” and in any event, the affidavit of William Allen, superintendent of AWRSD, as well as the deposition of the former superintendent, Raymond Glynn, create a genuine issue of material fact on this question of the scope of Katter’s indorsement authority.

 While I have concluded that Fleet may not be found liable on a negligence theory for claims related to the alleged unauthorized account, liability under G.L.c. 106, §3-419 does not depend on negligence.

 I focus here on Rafter’s indorsements on checks made payable to AWRSD. and not on checks which Ratter wrote on the Fleet account, because the allegations of Count XXX of the amended complaint appear limited to the former issue.

 The point about special limitations on Ratter’s authority arising out of his status as treasurer of AWRSD was raised in a recent memorandum of AWRSD. Fleet has objected to the argument, claiming that principles of finality preclude its consideration. I disagree, in that the issue here is whether or not to grant summary judgment. Considerations of finality have no great bearing on this case in its current status.